ANGELO DI FILIPPI et al., Respondents, v EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant.

Second Department, January 30, 1978

## APPEARANCES OF COUNSEL

*Werner Weinstock (Michael W. Brody* of counsel), for appellant.

*John V. Salierno* for respondents.

## OPINION OF THE COURT

Suozzi, J.

In an action to recover the proceeds of a life insurance policy, defendant appeals from a judgment of the Supreme

Court, Queens County, entered February 17, 1977, upon a jury verdict in favor of plaintiffs in the sum of $25,000, representing the proceeds of the policy. The judgment should be affirmed.

The decedent herein died on June 24, 1973. Plaintiff instituted this action to recover the proceeds of a life insurance policy issued on decedent's life on June 16, 1972. The defendant insurer, in denying the plaintiffs' claim for the proceeds of the policy and defending the action, alleged as a defense that the decedent had made a material misrepresentation of fact in his application for the insurance by failing to accurately describe his medical condition therein.

The only questions submitted to the jury pertained to the materiality of the misrepresentations. The cause of death was not submitted. The jury found in favor of plaintiffs. In our view, the issue of materiality was, on this record, an issue of fact to be resolved by the jurors and their finding, which is supported by the evidence, should not be disturbed.

Section 149 of the Insurance Law provides, in part:

"2. No misrepresentation shall avoid any contract of insurance * * * unless such misrepresentation was material. *No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract.*

"3. In determining the question of materiality, evidence of the practice of the insurer * * * with respect to the acceptance or rejection of similar risks shall be admissible.

"4. A misrepresentation that an applicant for life * * * insurance has not had previous medical treatment * * * or care in a hospital * * * shall be deemed, for the purpose of determining its materiality, a misrepresentation that the applicant has not had the disease * * * *for which such treatment or care was given*" (emphasis supplied).

It has been held that a decedent's medical condition and the materiality of the misrepresentation are "essentially factual issues for the jury to decide" *(Orenstein v Metropolitan Life Ins. Co.,* 18 AD2d 1016), except where the evidence as a whole excludes every reasonable inference but one, then the court may rule on the issue of materiality as a matter of law *(Giuliani v Metropolitan Life Ins. Co.,* 269 App Div 376).

It was the defendant insurer's specific contention that the decedent had not given true and complete answers on his

application when he answered "No" to the following questions:

"7. Have you ever been treated for or ever had any known indication of * * * f. Sugar, albumin, blood or pus in urine; venereal disease; stone or other disease or disorder of kidney, bladder, prostate or reproductive organs? * * *

"10. Other than as stated in answers to questions 6-9, have you within the past 5 years:

"a. Consulted or been examined or treated by any physician or practitioner?

"b. Had any illness, injury or surgery?

"c. Been a patient in a hospital, clinic, sanatorium, or other medical facility?"

The insurer further argued that contrary to these answers, the decedent had in fact been hospitalized from April 14, 1972 to April 17, 1972, about one month prior to the making of his application, for bilateral obstructive uropathy (i.e., an obstruction in the genitourinary tract) which was probably caused by retroperitoneal fibrosis and that it would not have issued the policy had it known of this potentially serious condition.

Plaintiffs, on the other hand, argued that the obstruction had been caused by a kidney stone which had passed through the decedent's system prior to the making of the application, thus effectively ending the obstruction.

The hospital record itself posed the two alternatives by stating: "Left ureteral colic. Probably passed stone prior to IVP. Bilateral obstructive uropathy, possibly due to retroperitoneal fibrosis."

In support of their case, plaintiffs produced the decedent's treating physician, who was visited by the decedent four times within a three-week period following his discharge from the hospital. He testified most emphatically, based on these visits and tests conducted on those occasions, that the cause of the obstruction was a kidney stone which had passed and not the rare and more serious condition of retroperitoneal fibrosis, which requires continuous medical treatment. In addition, the autopsy report was silent as to the existence of any fibrosis.

Defendant's medical expert testified that the obstruction was not consistent with a kidney stone. He could not pinpoint the exact cause of the obstruction, however, and only stated that fibrosis was a possibility. Moreover, he conceded that a slight obstruction might be of little consequence to the defend-

ant insurer, depending upon the course and degree of the obstruction; the defendant's own underwriting manual confirmed this testimony. Finally, the defendant failed to produce any applications containing disclosures of bilateral obstructions, or of kidney stones within three years of the making of the applications, which would indicate its current practice with respect to the acceptance or rejection of these risks.

■ Under these circumstances, the nature of the decedent's condition at the time of the application, and the materiality of any misrepresentation relating thereto, were properly submitted to the jurors for resolution, and their finding in favor of plaintiffs should not be disturbed (see *Orenstein v Metropolitan Life Ins. Co.,* 18 AD2d 1016, *supra; Giuliani v Metropolitan Life Ins. Co.,* 269 App Div 376, *supra).*

■ Finally, defendant argues that it had the burden of proof in this case by virtue of its affirmative defense of material misrepresentation and, therefore, it had the right to open and close to the jury, a right which the trial court improperly afforded to plaintiffs. In our view, the trial court acted properly in allowing plaintiffs to open and close to the jury.

By interposing the affirmative defense of material misrepresentation, defendant effectively denied an essential allegation of plaintiffs' prima facie case which was specifically pleaded in the complaint, i.e., that all conditions had been performed and that the policy was in full force and effect. Plaintiffs, therefore, had the ultimate burden of establishing that a valid contract existed which was binding on defendant and, accordingly, had the right to open and close to the jury (see *Murray v Narwood,* 192 NY 172; 4 Weinstein-Korn-Miller, NY Civ Prac, par 4016.06).

HAWKINS, J. (dissenting). I dissent and vote to reverse the judgment of the trial court.

The abiding fact remains that the decedent deliberately, significantly and designedly failed to disclose to the appellant insurer that on April 17, 1972—a month preceding his execution of the application for life insurance—he had been discharged from the hospital where he had been confined for four days. As to each of the following questions on the application for insurance, the applicant answered in the negative:

"7. Have you ever been treated for or ever had any known indication of * * * f. Sugar, albumin, blood or pus in urine;

venereal disease; stone or other disease or disorder of kidney, bladder, prostate or reproductive organs? * * *

"10. Other than as stated in answers to questions 6-9, have you within the past 5 years:

"a. Consulted or been examined or treated by any physician or practitioner?

"b. Had any illness, injury or surgery?

"c. Been a patient in a hospital, clinic, sanatorium, or other medical facility?"

Question "7f" unmistakably relates to any genital-urinary problems for which the applicant may have sought medical advice. On decedent's admission to Physicians Hospital, on April 14, 1972, the following diagnosis was made: "Left ureteral colic. Probably passed stone prior to IVP. Bilateral obstructive uropathy, possibly due to retroperitoneal fibrosis."

The majority opinion is largely anchored to a discussion of whether the medical problem for which the decedent was hospitalized was ultimately the cause of death, which occurred on June 24, 1973, some 14 months after the hospitalization and 13 months after execution of the application. Although the precise cause of death and its relation to the previous hospital sojourn appear to have engendered varying medical testimony, neither the trial court nor the jury should have been called upon to resolve that irrelevant and immaterial issue.

Surely the carrier should have been accorded an opportunity prior to issuing the policy to inquire into the cause of the decedent's hospitalization. The physician who headed the defendant's medical underwriting committee testified that had the defendant had knowledge, firstly, of the decedent's hospitalization, and, secondly, of the diagnosis and prognosis it would not have issued the policy.

It should be emphasized that the issue is not whether the decedent died of the very condition for which he was hospitalized. Rather, it is whether concealment of the fact of his hospitalization constituted such a material misrepresentation as to void the policy as a matter of law under section 149 of the Insurance Law.

Most recently, in *Massachusetts Mut. Life Ins. Co. v Tate* (42 NY2d 1046), the Court of Appeals reversed an order of this court, under a comparable state of facts, and did so, expressly on the dissent of Mr. Justice HOPKINS (56 AD2d 173, 182-183).

There, the insured had failed to disclose that she had been treated by a psychiatrist for "involutional melancholia with post-partum depression" and "paranoid ideation"; also, that she had been treated for alcohol addiction. Death, however, resulted from pneumonia some 23 months after the policy's issuance. The dissent held (56 AD2d, at p 182): "It is not relevant that the decedent did not understand the significance of the questions and her answers (see *Leamy v Berkshire Life Ins. Co.,* 39 NY2d 271, 274). Moreover, the plaintiff is entitled to determine what risks it will accept for insurance (see *Vander Veer v Continental Cas. Co.,* 34 NY2d 50, 52)."

Whether death resulted from the conditions for which the psychiatrist's advice had been sought and for which the insured had been treated was not "decisive" (56 AD2d, at p 183): "It is not decisive that the cause of death was not related to the condition diagnosed by Dr. Ferrell. 'The fact that the applicant died from another cause does not disprove the increase of risk' (see *Glickman v New York Life Ins. Co.,* 291 NY 45, 52; see, also, *Vander Veer v Continental Cas. Co.,* 34 NY2d 50, *supra; Hollinger v Mutual Benefit Life Ins. Co.,* 541 P2d 128 [Col]; *Vaughn v American Nat. Ins. Co.,* 543 P2d 1404 [Okl]; Ann 148 ALR 912)."

At bar, there is a far greater direct relationship between the medical facts concealed and the cause of death.

It was held in *Cherkes v Postal Life Ins. Co.* (285 App Div 514, affd 309 NY 964), where the evidence established a deliberate concealment by the insured of a kidney condition, that the misrepresentation was material. The rationale there stated was that the insured, by failing to reveal the true condition causing the hospitalization and the name of the hospital, deprive the carrier of an opportunity to make inquiry and, hence, learn of the applicant's true medical condition. The court in *Cherkes* held (p 516) that "[t]he issue tendered [kidney condition] should not have been submitted to the jury and a verdict should have been directed for the defendant."

In *Tolar v Metropolitan Life ins. Co.* (297 NY 441), which involved a misrepresentation that the insured had not received previous medical treatment when she had been examined by the family physician several times and found to have been suffering from a chronic endocarditis condition, the Court of Appeals held that there had been a material misrepresentation. It noted that the materiality having been estab-

lished as a matter of law, the defendant's motion for a directed verdict should have been granted.

*Vander Veer v Continental Cas. Co.* (34 NY2d 50) involved an application for a group accident and health insurance policy, rather than life insurance. The applicant, a physician, failed to disclose a cardiac abnormality. The Court of Appeals held that as a matter of law such misrepresentation was material, stating (pp 52-53): "Plaintiff failed to disclose, as the statement of his physician indicated, that he had a history of having had episodes of paroxysmal atrial fabrillation since adolescence. Obviously, this was not a temporary condition or a matter so trivial that it might not have affected the disposition of the application. We hold, as a matter of law, that at the time of making application, plaintiff did misrepresent his health and we hold further, as a matter of law, that such a misrepresentation was material (Insurance Law, § 149; *Wageman v. Metropolitan Life Ins. Co.,* 24 A D 2d 67, affd. 18 N Y 2d 777). By his failure to disclose his heart condition, plaintiff deprived the defendant of freedom of choice in determining whether to accept or reject the risk. On the record, there is little doubt that the defendant would have rejected the risk or certainly would have rejected it under Plan A."

I cannot agree that the issue of materiality was an issue of fact to be resolved by the jury. Whether the obstruction for which the decedent was hospitalized was caused by a kidney stone which had been expelled by the decedent within the month prior to the application, or whether it was caused by retroperitoneal fibrosis, is not an issue which should have been submitted to the jury for, in my opinion, it is quite irrelevant to the essential issue at bar, to wit, did the applicant's concealment of hospitalization and treatment for a period of four days immediately prior to the date of the application constitute a material misrepresentation within the purview of section 149 of the Insurance Law? Under the holdings of the above-cited cases, in my view, the trial court should have directed a verdict in defendant's favor. Surely it cannot be urged that the applicant was unaware of his hospitalization and discharge one month prior to his execution of the application.

DAMIANI, J. P., and O'CONNOR, J., concur with SUOZZI, J.; HAWKINS, J., dissents and votes to reverse the judgment and direct that judgment be entered in favor of defendant, with an opinion.

Judgment of the Supreme Court, Queens County, entered February 17, 1977, affirmed, with costs.