*In re* CERTIFIED QUESTION,

WICKERSHAM v JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY

Docket No. 66272. Argued June 3, 1981 (Calendar No. 11).—Decided April 26, 1982.

Linda Wickersham brought an action in the United States District Court for the Eastern District of Michigan, seeking to recover the proceeds of a life insurance policy issued by the John Hancock Mutual Life Insurance Company on the life of William Wickersham, her husband, who had died in a swimming accident. The defendant denied liability and sought to rescind the contract and return the premiums paid on the ground that the insured had materially misrepresented his medical history at the time of his application for insurance and that, but for this misrepresentation, his application would have been rejected. The plaintiff argued that misrepresentation is a ground for rescission only where an insured dies of a cause related to the subject of the misrepresentation, and that, in her husband's case, there was no causal relation between his death and the misrepresentation.

The question whether materiality, as used in the Michigan Insurance Code of 1956, may be construed either to require that a misrepresentation affect an insurer's risk or to require that the subject of the misrepresentation be related to the cause of an insured's death was certified to the Supreme Court of Michigan by the United States District Court for the Eastern District of Michigan, John Feikens, C.J.

In a unanimous opinion by Justice Moody, the Supreme Court *held:*

A material misrepresentation in an application for life insurance, but for which the application would have been rejected, need not specifically relate to the cause of the insured's death to entitle the insurer to rescind or avoid the policy.

1. The statute in question (its applicability is not disputed by

REFERENCES FOR POINTS IN HEADNOTES
[1] 43 Am Jur 2d, Insurance §§ 735-737.
[2] 43 Am Jur 2d, Insurance § 734.

the parties) provides that recovery may not be barred by the falsity of a statement in the application unless the false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer. The words of the statute and case law reflect a conceptual difference between the terms "hazard assumed" and "acceptance of the risk". The Legislature's use of the words "either" and "or" in the statute recognizes that the two terms have different meanings. "Acceptance of the risk" relates to the evaluation made by an insurer prior to issuing a policy, while "hazard assumed" refers to the circumstances of a loss. To construe the statutory language to require a causal nexus between a misrepresentation and a loss would make the term "acceptance of the risk" superfluous. A fact or statement material to the acceptance of the risk does not necessarily affect the loss. Subsection (1) sets forth a test of materiality which focuses on the time before issue of the policy: whether knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make the contract. In this case the parties agree that the misrepresented information would have led to such a refusal; under the statute this forecloses further inquiry into the question of materiality.

2. A reading of the statute as a whole does not support a conclusion that a causal connection is required, nor does a review of its legislative history subsequent to enactment. Rather all of the statute's subsections and amendments reinforce the conclusion that no causal connection is required before a right to recovery is barred because of a material misrepresentation. A causal connection was not required at common law and the statute contains no legislative command requiring a causal relation contrary to the common-law standard.

3. A requirement of a causal connection would lead to inequitable consequences. An applicant who disclosed a medical history which would lead to a rejection by the insurer would fail to get a policy. In contrast, an applicant who concealed his medical history could enable his beneficiary to receive benefits where the cause of his death was not related to the misrepresentation. A showing that the insurer would not have accepted the risk would not aid the insurer, and the fact that the applicant might not have been insurable would not be relevant. It cannot be concluded that the Legislature intended to place applicants who deliberately misrepresent or conceal material facts in an advantageous position relative to applicants who reasonably disclose such facts.

4. The question presented narrowly addressed material mis-

representation. It does not involve good-faith answers, errors in completing applications, concealment of trivial or clearly nonmaterial ailments, reliance, or other questions of fact.

1. INSURANCE — LIFE INSURANCE — MATERIAL MISREPRESENTATION.

A material misrepresentation in an application for life insurance which otherwise would cause the insurer to reject the application need not specifically relate to the cause of the insured's death to operate as a bar to recovery and entitle the insurer to rescind or avoid the policy (MCL 500.2218; MSA 24.12218).

2. INSURANCE — LIFE INSURANCE — MATERIAL MISREPRESENTATION — WORDS AND PHRASES.

The Insurance Code of 1956 was intended to distinguish between the terms "acceptance of the risk" and "hazard assumed" in providing the statutory bar to recovery for material misrepresentation in an application for life insurance; "acceptance of the risk" relates to the evaluation made by an insurer before the issuance of a policy, while "hazard assumed" refers to the circumstances of the loss (MCL 500.2218; MSA 24.12218).

*N. Dwight Teachworth, P.C.* (by *N. Dwight Teachworth*), for plaintiff.

*Dickinson, Wright, McKean, Cudlip & Moon* (by *John E. S. Scott, Philip M. Frost, Richard M. Bolton,* and *Susan Bieke Neilson*) for defendant.

BLAIR MOODY, JR., J. Plaintiff asserts a claim for proceeds as beneficiary under a life insurance policy. Defendant responds that the deceased misrepresented a material fact in the application for the policy which bars recovery.

Pursuant to GCR 1963, 797.2,[1] this Court ordered consideration of the following question certified by the United States District Court, Eastern

---

[1] GCR 1963, 797.2(a) provides:

"When a federal court or state appellate court considers a question that Michigan law may resolve and that is not controlled by Michigan Supreme Court precedent, the court may on its own motion or that of an interested party certify the question to the Michigan Supreme Court."

District of Michigan, Southern Division. 410 Mich 1108 (1981):

"Should the term 'materiality' in [MCL 500.2218; MSA 24.12218] be construed to require only that a misrepresentation affect the insurer's risk, or should it be construed also to require that the subject of the misrepresentation be related to the cause of the insured's death?"

We conclude that a material misrepresentation need not specifically relate to the cause of an insured's death for an insurance company to be entitled to the rescission or avoidance of a life insurance policy.

I

The United States District Court set forth the relevant facts in the certificate prepared in conformity with GCR 1963, 797.2(b):

"Plaintiff, Linda Wickersham, initiated this action to recover forty-four thousand ($44,000.00) dollars allegedly due on a life insurance policy issued by the defendant. The policy insured the life of the plaintiff's husband who had died in a swimming accident. The plaintiff was named as the insured's beneficiary. Defendant denies liability under the policy, and has offered to rescind it and return the insured's premiums to the plaintiff.

"Defendant argues that the insured misrepresented his medical record at the time he applied for the policy, and that these misrepresentations deceived the defendant into accepting an insurance application which it otherwise would have rejected. Plaintiff concedes these facts, but argues that misrepresentation can only justify recission [sic] if the insured dies of a cause related to the subject of the misrepresentation. It is stipulated that the insured's death was not related to his undisclosed health problem, paroxysmal tachycardia."

The statute in question, MCL 500.2218; MSA 24.12218, provides:

"The *falsity of any statement* in the application for any disability insurance policy covered by chapter 34 of this code *may not bar the right to recovery thereunder unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer.*

"(1) No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless the misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make the contract.

"(2) A representation is a statement as to past or present fact, made to the insurer by or by the authority of the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof. A misrepresentation is a false representation, and the facts misrepresented are those facts which make the representation false.

"(3) In determining the question of materiality, evidence of the practice of the insurer which made the contract with respect to the acceptance or rejection of similar risks shall be admissible.

"(4) A misrepresentation that an applicant for life, accident or health insurance has not had previous medical treatment, consultation or observation, or has not had previous treatment or care in a hospital or other like institution, shall be deemed, for the purpose of determining its materiality, a misrepresentation that the applicant has not had the disease, ailment or other medical impairment for which such treatment or care was given or which was discovered by any licensed medical practitioner as a result of such consultation or observation. If in any action to rescind any contract or to recover thereon, any misrepresentation is proved by the insurer, and the insured or any other person having or claiming a right under the contract, shall prevent full disclosure and proof of the nature of the medical

impairment, the misrepresentation shall be presumed to have been material." (Emphasis added.)

The issue presented is whether the above-quoted statute requires that there be a causal relation between a material misrepresentation and the loss insured against before a right to recover under an insurance policy is barred.

## II

We begin our analysis with the language of the statute. The opening sentence of the statute does not specifically state or suggest that the material misrepresentation relate to the cause of death. The statute requires that the misrepresentation "materially [affect] *either* the acceptance of the risk *or* the hazard assumed by the insurer".[2]

Acceptance of the risk and hazard assumed are terms with different meanings. One court has explained the meaning of hazard assumed in this manner:

"A misstatement to be material to the hazard assumed must be shown in some way to have affected it or contributed to the loss, and in a substantial manner." *Prudential Ins Co of America v Saxe,* 77 US App DC 144, 156; 134 F2d 16, 28 (1943), *cert den* 319 US 745 (1943).

Based upon the limited record in this case and the narrow question presented for review, it is appar-

[2] The parties do not dispute the applicability of this portion of the statute to the case at bar involving a life insurance policy rather than a policy of disability insurance. *Cf. Housour v Prudential Life Ins Co of America,* 1 Mich App 455; 136 NW2d 689 (1965), *lv den* 377 Mich 697 (1966).

ent that the misrepresentation of the insured's medical record did not affect or contribute to the hazard assumed in this case—the death of the insured.

Our inquiry must proceed, however, as the words of the statute and the case law reflect a conceptual difference between the terms "hazard assumed" and "acceptance of the risk". The Legislature's use of "either" and "or" leads to a recognition that the two terms have different meanings. Acceptance of the risk refers to the time of making of the contract of insurance and to the insurance concept of risk. Whether an insurer determines to enter into a contract is affected by its assessment of the likelihood of a fact increasing the chances of the loss insured against. See *Jefferson Standard Life Ins Co v Clemmer,* 79 F2d 724, 733 (CA 4, 1935).

Thus, the conceptual difference between the two phrases is that "acceptance of the risk" relates to the evaluation made before issuance of an insurance policy which differs from "hazard assumed", which refers to the circumstances of the loss. *Jones v Prudential Ins Co of America,* 388 A2d 476, 481 (DC App, 1978):

"The risk involved in insuring against a possible loss is distinct from the actual occurrence of the loss. In determining whether the acceptance of the risk was affected, the focus properly must be on the basis for the issuance of the policy, not on the circumstances of the insured's subsequent death."

The portion of the statute including the risk and hazard language was part of 1956 PA 218, the Insurance Code of 1956. This original section restated the earlier law which included similar lan-

guage.[3] To construe the statutory language to include and require a causal nexus between the false statement and the loss, the construction sought by plaintiff, would make the term "acceptance of the risk" superfluous. Any statement or fact contributing to the loss or hazard would, it seems, be material to the risk. As demonstrated in this case, however, a fact or statement material to the acceptance of the risk does not necessarily affect the loss. See *Robinson v The Reliable Life Ins Co,* 554 SW2d 231, 234 (Tex Civ App, 1977), *aff'd* 569 SW2d 28 (Tex, 1978). We cannot presume that the Legislature intended that the clause concerning risk should have no separate meaning or effect from the clause concerning hazard, the actual loss.

In prior litigation dealing with these concepts, this Court has not previously adopted plaintiff's view that before an insurance policy may be rescinded or avoided there must be a causal relation between the misrepresentation and the loss. In *Western & Southern Life Ins Co v Ogrodnik,* 290 Mich 254; 287 NW 454 (1939), we granted relief to the insurance company although the insured died of pneumonia and not heart disease, which he had denied having on the application for insurance. The false representations had induced the issuance of the policy. *Id.,* 257. *Ogrodnik* was cited with approval in *Bendford v National Life & Accident Ins Co,* 356 Mich 52, 63; 96 NW2d 113 (1959). *Bendford* also indicated that there is no requirement of a causal relation in Michigan law. See also *Continental Assurance Co v Shaffer,* 157 F

---

[3] 1948 CL 522.17; MSA 24.280 provided:

"The falsity of any statement in the application for any policy covered by this chapter shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."

Supp 829, 834 (WD Mich, 1957) (no causal relation required).

A review of all the subsections under this statute fails to support the claim of plaintiff that a causal relation between the false statement and loss is required. In 1957, the Legislature amended MCL 500.2218; MSA 24.12218 by adding the four numbered paragraphs to this section. 1957 PA 91. The added paragraphs, in part, define misrepresentation and materiality. These additional provisions further indicate a legislative intent to determine materiality at the time the insured signs the application and the insurer decides whether to issue a policy to the applicant.

Subsection (1) sets forth a test of materiality which focuses upon the time frame prior to issuance of the policy: Whether "knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make the contract". In the instant case the parties agree that the misrepresented information would have led to such a refusal. Under our statute this forecloses further inquiry into the question of materiality.

That materiality is to be tested well before the loss occurs is also demonstrated by subsection (2). This statutory language defines representation and misrepresentation as a statement "at or before the making of the insurance contract as an inducement to the making thereof". Similarly, subsection (3) also explains that the focus is upon "the acceptance or rejection of similar risks". This procedure also occurs prior to the issuance of the policy. Accordingly, these additional subsections reinforce the conclusion that there is no requirement under this statute of a causal relation between a misrepresentation and the circumstances of the loss before a right to recover under an insurance policy is barred because of a material misrepresentation.

In *Cartwright v Maccabees Mutual Life Ins Co,*
398 Mich 238; 247 NW2d 298 (1976), the Court
analyzed MCL 500.2218(4); MSA 24.12218(4), which
establishes a presumption of materiality when a
beneficiary prevents disclosure of a medical im-
pairment. In *Cartwright,* the insurer would also
have refused to make the contract, but for the
material misrepresentations in the insured's appli-
cation. Although not specifically passing upon the
question in the instant case, this Court stated:

"In the instant case, the insurer introduced substan-
tial evidence of specific and grossly inaccurate represen-
tations in the Cartwright application. *Not only can
there be no disagreement among reasonable men that
these false statements would materially affect the ac-
ceptance of the risk by defendant,* but also they are
presumed material by reason of plaintiff's invocation of
the privilege to prevent full disclosure to the jury of the
extent of Mr. Cartwright's medical impairment." 398
Mich 249. (Emphasis added.)

It should not pass unnoticed, however, that the
Legislature has limited in other ways an insurer's
power to avoid an insurance policy on grounds of
material misrepresentation. Under the provisions
of MCL 500.4014; MSA 24.14014, an insurance
policy generally "shall be incontestable after it
shall have been in force during the lifetime of the
insured for 2 years". The scope of this incontesta-
bility provision may be found in *Bogacki v Great-
West Life Assurance Co,* 253 Mich 253; 234 NW
865 (1931), and *Rasmussen v Equitable Life Assur-
ance Society of the United States,* 293 Mich 482;
292 NW 377 (1940).

There is no doubt that the incontestability
clause, if applicable, would have barred the de-
fense asserted in the instant case. The two-year
limit permits full investigation by an insurance

company of any matters which formed part of the decision to make the contract. In effect, the statute permits an insurance company to continue to investigate or to wait to further investigate, for a full two years. Once the time limit is passed the insurer may no longer, in general, avoid the policy. This statute balances the concerns of insureds that years after the application date an insurance company would refuse to pay benefits and desire to avoid contracts, no matter how old, if there was a material misrepresentation at the time the contract was made. The impact of this section lends no force to the suggestion that a causal relation is necessary.

## III

Our conclusion today is in accord with the majority view which rejects the requirement that there be a causal relation between the misrepresentation and the cause of death.[4]

"[I]t is immaterial that there is no causal or other

[4] See generally *Benson v Bankers Life & Casualty Co,* 147 Colo 175; 362 P2d 1039 (1961); *Preston v National Life & Accident Ins Co,* 196 Ga 217; 26 SE2d 439 (1943); *Campbell v The Prudential Ins Co of America,* 15 Ill 2d 308; 155 NE2d 9 (1958); *Weinstein v Metropolitan Life Ins Co,* 389 Ill 571; 60 NE2d 207 (1945); *New York Life Ins Co v Kuhlenschmidt,* 218 Ind 404; 33 NE2d 340 (1941); *Radosta v The Prudential Ins Co of America,* 163 So 2d 177 (La App, 1964), *writ refused* 246 La 589; 165 So 2d 483 (1964); *Howard v Aid Ass'n for Lutherans,* 272 NW2d 910 (Minn, 1978); *Formosa v The Equitable Life Assurance Society of the United States,* 166 NJ Super 8; 398 A2d 1301 (1979), *cert den* 81 NJ 53; 404 A2d 1153 (1979); *Di Filippi v Equitable Life Assurance Society of the United States,* 45 NY2d 939; 411 NYS2d 562; 383 NE2d 1155 (1978), *rev'g* 61 AD2d 168; 401 NYS2d 532 (1978); *Massachusetts Mutual Life Ins Co v Tate,* 42 NY2d 1046; 399 NYS2d 211; 369 NE2d 767 (1977), *rev'g* 56 AD2d 173; 391 NYS2d 667 (1977); *Vander Veer v Continental Casualty Co,* 34 NY2d 50; 356 NYS2d 13; 312 NE2d 156 (1974); *Mutual Life Ins Co v Dibrell,* 137 Tenn 528; 194 SW 581 (1916); *Montgomery v Reserve Life Ins Co,* 585 SW2d 620 (Tenn App, 1979); *Delaney v Prudential Ins Co of America,* 29 Wis 2d 345; 139 NW2d 48 (1966).

relationship between the loss which is sustained under the policy and the falsity of the representation." 7 Couch, Insurance (2d ed), § 35:87, p 102. See also § 35:47, p 56.

43 Am Jur 2d, Insurance, § 737, p 724 states:

"In the absence of a statute providing otherwise, however, it is not necessary to the defense of an action on a life insurance policy on the ground that misstatements in the application as to the applicant's medical history were material to the risk, that the matters not disclosed should have had a causal relation to the death of the insured." See also § 760, pp 743-745, and §§ 782-783, pp 763-768. *Cf.* 45 CJS, Insurance, § 595(3), pp 407-409.

The prevailing view at common law also held that it is not necessary that the misrepresentation relate to a matter which caused the loss. Anno: *Impairment of insured's health or physical condition not contributing to his death or disability as affecting insurer's liability,* 148 ALR 912, 913. See also 1A Appleman, Insurance Law and Practice, § 245, p 125, and Meyer, Life and Health Insurance Law, § 6:3, p 160.

In contrast, some states do require, by statute, that the misrepresentation "shall have actually contributed to the contingency or event on which the policy is to become due and payable" before a misrepresentation is material and an insurance policy is rendered void.[5] "These statutes constitute

[5] Kan Stat Ann § 40-418, Mo Rev Stat § 376.580, RI Gen Laws § 27-4-10. Ark Stat Ann § 66-3208 does not contain the same language as these three statutes. However, § 66.3208(c) states in part:

"The insurer in good faith * * * would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known."

This language has led the Arkansas Supreme Court to hold that the insurer must show a causal relation to avoid a credit life insurance policy. *National Old Line Ins Co v People,* 256 Ark 137; 506 SW2d 128

a material departure from the common law rule."
Meyer, *supra,* § 6:10, p 171. As the Michigan stat-
ute does not contain such a precise legislative
command, it becomes difficult to presume that by
not using similar terminology the Legislature in-
tended Michigan's statute to be construed as to
require a causal relation contrary to the common-
law standard.

In the absence of a specific directive, the vulner-
ability of plaintiff's position becomes apparent for
another reason. What would be the consequence if
an insurer sought to rescind the policy prior to the
death of the insured? Would it be acceptable for
the insured to assert that there was no cause-effect
relation established and thus rescission could not
be allowed? To read the statute as requiring a
causal relation after death, but not before death,
would mean that the "or" in the phrase "accep-
tance of the risk or the hazard assumed" would be
read in the disjunctive before the loss occurred,
but in the conjunctive after the loss. Furthermore,
the word "either" would be read out of the statute
in a suit before the loss. *Cf. Robinson,* 554 SW2d
234.

Furthermore, consideration of some of the ineq-
uitable consequences that would flow from the
requirement of showing a causal relation indicate
that such an interpretation is not persuasive. If an
applicant disclosed his or her medical history and
such history was material under subsection (1) in
that it "would have led to a refusal by the in-

(1974). *Cf. Countryside Casualty Co v Orr,* 523 F2d 870 (CA 8, 1975)
(applying common-law rule and not requiring causal relation in an
automobile insurance case involving Arkansas law) and *Central Na-
tional Life Ins Co v Peterson,* 23 Ariz App 4; 529 P2d 1213 (1975)
(similar statute to Arkansas statute construed to mean that if insurer
relies on fact it would not have provided coverage with respect to a
certain hazard, that is the very hazard which must have caused the
loss in order to avoid the policy).

surer", this applicant would fail to get a policy. On the other hand, the beneficiary of an applicant who had concealed his or her material medical history could receive policy benefits. A showing that it would not have accepted the risk would not aid the insurer. The fact that an applicant might be uninsurable would have no relevancy. The only issue would be whether the misrepresentation had a causal relation to the insured's death. Proving the particular cause of death and all of its contributing factors is not always possible. Accordingly, absent clear direction, we cannot conclude that the Legislature intended to place applicants who deliberately misrepresent or conceal material facts in such an advantageous legal position as compared to those who reasonably disclose them. *Cf. Ketchum & Co, Inc v State Mut Life Assur Co of Worcester, Mass,* 162 F2d 977, 979 (CA 2, 1947).

Plaintiff argues that *Howard v Golden State Mutual Life Ins Co,* 60 Mich App 469, 483-484; 231 NW2d 655 (1975), *lv den* 395 Mich 762 (1975), indicated that there must be "at least a superficial cause-effect relationship between the lack of information to the insurer and the death of the insured". Although the *Howard* Court did so indicate, its discussion was *obiter dictum.* We agree with the view that materiality might become more evident if the misrepresentation need also have a causal connection to the loss as well as affected the risk. However, that has not been the law of this jurisdiction and for the reasons herein set forth we decline to so hold.

It is important to note that the instant case involves a narrow question based upon a limited record. We are not presented with a record involving questions of good-faith answers, errors in writing the application, concealment of trivial or

clearly nonmaterial ailments, reliance, or other questions of fact. The parties have stipulated that the insurer would have refused to make the contract and apparently agreed that the only issue left for determination is the certified question. That is the only issue before this Court.

Accordingly, we answer the certified question by concluding that no causal relation need be shown.

Costs are governed by GCR 1963, 797.2(e).

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, and RYAN, JJ., concurred with BLAIR MOODY, JR., J.