*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DOA DOA, INC., and GARDEN CITY REAL
ESTATE, LLC,

UNPUBLISHED
October 31, 2019

Plaintiffs-Appellees,

v

No. 339215
Wayne Circuit Court
LC No. 16-003251-CB

PRIMEONE INSURANCE COMPANY,

Defendant-Appellant.

Before: CAVANAGH, P.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

This insurance dispute arises out of a fire that destroyed a bar. Bar 153 owner, Doa Doa, Inc (DDI), and property owner, Garden City Real Estate, LLC (GCRE), filed this lawsuit after defendant PrimeOne Insurance Company rescinded DDI's insurance policy and declined to cover the incident. At the core of this case is DDI's representation in its insurance application that police were only called to the bar once in the year preceding submission of its insurance application; defendant's subsequent investigation revealed there were actually numerous police calls to Bar 153 in the prior year. Following discovery, the parties filed cross motions for summary disposition, which the trial court denied, reasoning that there was a genuine issue of material fact as to whether DDI's answer to the police call question on the insurance application constituted a material misrepresentation. Defendant sought leave to appeal and this Court peremptorily reversed the trial court, concluding that defendant was entitled to rescind the policy *ab initio* and that neither plaintiff may recover.[1] Plaintiffs sought relief in the Supreme Court. In lieu of granting leave to appeal, the Supreme Court vacated the portion of our November 22,

---

[1] *Doa Doa, Inc v PrimeOne Ins Co*, unpublished order of the Court of Appeals, entered November 22, 2017 (Docket No. 339215).

-1-

2017 order reversing the trial court's order, and it remanded the case to this Court for consideration as on leave granted.[2] We now reverse in part and remand for further proceedings.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

On October 23, 2015, Bar 153 was destroyed by fire, the cause of which was "undetermined." Bar 153 was a bar and restaurant business located in Garden City, Michigan. Jeffrey Jonna owned and operated the bar through his company, DDI, while his brother David Jonna, through his company, GCRE, owned the building and premises where the bar was located.

At the time of the fire, defendant insured DDI under a policy with coverage provisions for general liability and property damage. DDI had applied for coverage on January 24, 2015, and defendant issued the policy on February 6, 2015, eight months before the fire. The insurance policy identified DDI, doing business as Bar 153, as the named insured, and listed GCRE as an additional insured. Notably, GCRE was listed only under the general liability section of the policy, not on the property section. Thomas Dickow, the independent insurance agent who had processed the insurance application, had worked with plaintiffs in the past and was aware that GCRE owned the building housing Bar 153, and that DDI owned the business itself. Dickow testified in his deposition that he listed GCRE as the building owner and additional insured in the general liability section of the insurance application, and his intention was that the policy would cover GCRE as an additional insured and building owner under both the property and general liability provisions of the insurance policy. However, the property section of the insurance application lacks any reference to GCRE as the building owner and additional insured; that portion of the application was left blank. The parties dispute whether the policy should be reformed to add GCRE as an additional insured under the property section.

As noted, at the core of this case is DDI's response to a question in defendant's insurance application seeking the "[n]umber of police calls within the past year[.]" DDI replied, "[one] call to report a fight that broke out outside the bar[.]" In the portion of the application regarding its prior claims history, DDI responded that the date of loss for a prior claim with a previous insurer was August 9, 2014, nothing was paid on the claim but the status was "open," and it was regarding a "[f]ight [that] started outside [the] bar after [the] bar was closed." Dickow testified that he did not know how many times police were called to Bar 153 in the year preceding the insurance application. He said that Jeffrey Jonna gave him this information, that he relied on the

---

[2] *Doa Doa, Inc v PrimeOne Ins Co*, 502 Mich 881; 912 NW2d 862 (2018) (Mem). In rendering its decision, the trial court gave as one of its reasons for denying defendant's motion for summary disposition that the police-calls question was "susceptible to different meanings." In our November 22, 2017 order, we held that "the term 'police calls' unambiguously means an occasion when the police were commanded or asked to come to the bar. . . . Jonna's disclosure of one police call shows he clearly understood the ordinary use of this term . . . . and the fact that employees of the bar were aware of the five undisclosed police call[s] imputes that knowledge to [DDI]." The Supreme Court's order vacating our November 22, 2017 order did not disturb these holdings.

truth of the information given him, and that he did not undertake any independent investigation to verify the information.

After the fire, DDI submitted sworn statements to prove its losses, claiming $350,000 in losses for personal property and contents, and $1,142,727.76 for the building. Defendant conducted an investigation that revealed multiple instances of criminal activity at the bar in the year preceding DDI's submission of the insurance application, including several incidents involving police calls to the bar that DDI had not reported on its application for insurance. A sampling of these incidents follows.

On February 23, 2014, the Garden City Police Department (Garden City police) received a report about an assault and battery that took place at Bar 153, in which a patron was punched in the head several times by another patron, knocked off of a bar stool, and attacked as she lay on the floor. The police report indicated that the investigating officer spoke with "the owner" of Bar 153 about the incident and that the victim would be returning to Bar 153 to review surveillance footage of the incident.

On April 13, 2104, Garden City police arrived at Bar 153 after receiving a report that a disorderly individual was throwing rocks at the bar. The individual was found in the middle of the street near the bar and after he was apprehended, Garden City police spoke to one of the bouncers at Bar 153 who shared that the individual was trying to fight with everyone at the bar and did not want to leave. According to the police report, Bar 153 declined to press charges, but asked that the individual not return to Bar 153.

On May 4, 2014, Garden City police visited Bar 153 after receiving a call about a fight at the bar. When Garden City police arrived, the fight was already over and one of the individuals involved in the fight was driven home for safety.

On July 9, 2014, Garden City police investigated a suspected fraud perpetration by Jeffrey Jonna. Specifically, the police were called after a patron stated that Jeffrey Jonna had asked to use his credit card to purchase items for Bar 153, apparently because the bar only deals in cash, and the patron subsequently discovered $235 in unauthorized charges to his credit card.

On August 9, 2014, Garden City police arrived at Bar 153 after a fight broke out as patrons were leaving the bar and two patrons assaulted a third patron.[3] When the police arrived, the victim had blood coming out of his nose and ears and was unconscious in the parking lot of the bar. The Garden City police spoke to Jeffrey Jonna on August 13, 2014, who confirmed that Bar 153 would likely have surveillance video of the assault. A prosecution was not pursued regarding this incident because the victim was not cooperative.

On September 4, 2014, Garden City police were called to Bar 153 after it was reported that an underage girl was selling alcohol to patrons. When the police arrived, they observed the underage girl attempting to provide liquor to a patron, and when they spoke to her she had an

---

[3] This incident apparently led to the prior claim referenced in DDI's insurance application.

odor of liquor on her breath. During this call, the police spoke with both David Jonna and Bar 153 employee Richard Latimer, both of whom identified themselves as managers of the bar. David Jonna was cited for contributing to the delinquency of a minor and the underage girl was subsequently cited for being a minor in possession of alcohol and tobacco.

On October 7, 2014, Garden City police were called to Bar 153 because of an intoxicated patron who refused to leave the bar. On that date, Latimer spoke with the police and the intoxicated patron was apprehended as he attempted to drive away from Bar 153.

On October 18, 2014, Garden City police visited Bar 153 and spoke to Jeffrey Jonna after one of the go-go dancers at the bar alleged that she was not being paid for her work. Shortly after, one of Jeffrey Jonna's friends physically groped the employee. Following an investigation and communication with the prosecutor's office, Jeffrey Jonna was cited on February 20, 2015, for maintaining a house of "indecent and improper conduct."

On December 2, 2014, Garden City police visited Bar 153 after being informed that minors were drinking inside the bar. When Garden City police arrived, they spoke with David Jonna, and after observing several patrons under the age of 21, one of whom police placed under arrest for being a minor in possession of alcohol, the police told David Jonna that a complaint would be filed against Bar 153 with the Michigan Liquor Control Commission.

After discovering these incidents, as well as others, defendant rescinded DDI's insurance policy, returned DDI's $11,425 premium, and denied plaintiffs' claim.

## II. DISCUSSION

Defendant contends that the trial court erred in denying its motion for summary disposition because there was no genuine issue of material fact that DDI made a material misrepresentation on its application for insurance, entitling defendant to rescind the policy. Upon careful review of the record evidence, we agree.

## A. STANDARD OF REVIEW

This Court reviews de novo the trial court's decision regarding a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). While defendant moved for summary disposition under both MCR 2.116(C)(7) and (C)(10), a review of the trial court's bench ruling confirms that the court denied summary disposition under MCR 2.116(C)(10), concluding that genuine issues of material fact for trial existed concerning the materiality of DDI's alleged misrepresentation.

> A motion under MCR 2.116(C)(10) . . . tests the *factual sufficiency* of a claim. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson*, 502 Mich at 761

(quotation marks, citation, and brackets omitted in original). [*El-Khalil v Oakwood Healthcare, Inc*, ___ Mich ____, ___; ___ NW2d ___ (2019) (Docket No. 157846); slip op at 7.]

## B. ACTIONABLE FRAUD

"[B]ecause insurance policies are contracts, common-law defenses may be invoked to avoid enforcement of an insurance policy, unless those defenses are prohibited by statute." *Titan Ins Co v Hyten*, 491 Mich 547; 554; 817 NW2d 562 (2012). Defendant asserted the common-law defense of fraud as an affirmative defense to avoid the contract with DDI. Fraud in the procurement of a contract may provide grounds "to retroactively avoid contractual obligations through traditional legal and equitable remedies such as cancellation, rescission, or reformation." *Id*. at 558. "Fraud in the inducement to enter a contract renders the contract *voidable* at the option of the defrauded party[.]" *Bazzi v Sentinel Ins Co*, 502 Mich 390, 408; 919 NW2d 20 (2018) (citation and quotation marks omitted). Accordingly, when an insured procures an insurance policy by fraud, the insurer has the prerogative to declare it *void ab initio*[.]" *Id*. From a legal standpoint, it is as if the insurance policy did not exist. *Id*. See also *Co of Ingham v Mich Co Rd Comm Self Ins Pool* (*On Remand*), ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 334077); slip op at 15.

Under Michigan law, there are several closely related doctrines that form "the rubric of fraud[.]" "These doctrines include actionable fraud, also known as fraudulent misrepresentation; innocent misrepresentation; and silent fraud, also known as fraudulent concealment." *Titan*, 491 Mich at 555. At issue in the present case is actionable fraud. Generally, the party asserting actionable fraud must establish

(1) That [the alleged defrauder] *made a material representation*; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by [the allegedly defrauded party]; (5) that [the allegedly defrauded party] acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery. [*Id*. (citation omitted; emphasis added).]

The party asserting actionable fraud is not required to establish "that the fraud could not have been discovered through the exercise of reasonable diligence." *Id*. at 557.

The issue on appeal is whether DDI's representation on its application for insurance that Bar 153 had only one police call in the year preceding submission of the application was "material." MCL 500.2218 provides in relevant part,

(1) No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder *unless the misrepresentation was material*. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented *would have led to a refusal by the insurer to make the contract*. [Emphasis added.]

-5-

In *Oade v Jackson Nat'l Life Ins Co of Mich*, 465 Mich 244, 253-254; 632 NW2d 126 (2001), our Supreme Court considered whether the insured's misrepresentations in applying for insurance were material as contemplated by MCL 500.2218. In *Oade*, after the insured applied for insurance, but before the defendant insurance company approved his application and delivered the policy, the insured was treated in a hospital for chest pains. *Id*. at 248. In his application for insurance, the insured had denied being treated for chest pains, and while the application imposed on him a duty to supplement the information provided, he did not inform the defendant insurance company of the hospitalization for chest pains. *Id*. After the insured was approved for insurance and subsequently died of a heart attack, the defendant conducted an investigation, discovered the hospitalization that the insured had failed to disclose, and denied payment under the terms of the policy. *Id*. at 249. After the plaintiffs filed an action in the trial court, the court granted summary disposition in favor of the defendant insurance company because the trial court concluded that the policy did not take effect because of the insured's failure to supplement his application. *Id*. at 249. The plaintiff appealed the case in this Court, and this Court reversed. Our Supreme Court then granted leave to consider MCL 500.2218's requirement that a misrepresentation in an application for insurance be *material* to allow the insurance company to avoid the contract in its entirety. *Oade*, 465 Mich at 246, 249-250.

In considering the issue, our Supreme Court looked to prior precedent, stating, "a fact or representation in an application is 'material' where communication of it would have had the effect of 'substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium.' " *Id*. at 253-254, quoting *Keys v Pace*, 358 Mich 74, 82; 99 NW2d 547 (1959). Our Supreme Court acknowledged that this definition was consistent with the statutory language of MCL 500.2218(1). *Oade*, 465 Mich at 254.

> In this case, the undisputed evidence presented to the trial court made clear that the correct information would have led the insurer to charge an increased premium, hence a different contract. Indeed, defendant's underwriter stated in her affidavit that defendant "may have been willing to offer a more expensive 'rated' insurance contract at approximately double the premium cost that Mr. Oade had paid for the 'standard' insurance policy in this instance." [*Id*.]

Concluding that genuine issues of material fact on the issue of materiality did not exist, our Supreme Court held that the defendant insurer was entitled to summary disposition under MCR 2.116(C)(10). *Oade*, 465 Mich at 254.

Subsequently, in *Montgomery v Fidelity & Guarantee Life Ins Co*, 269 Mich App 126, 127; 713 NW2d 801 (2005), this Court affirmed the trial court's order granting summary disposition in favor of the defendant life insurance company. The plaintiff had filed suit after the defendant insurance company rescinded its life insurance contract with the plaintiff's decedent after it determined that the plaintiff's decedent had made a material misrepresentation, failing to disclose that he used tobacco in the past, in the application for life insurance. *Id*. at 127-128. This Court recognized that under MCL 500.2218, an insurance policy may be rescinded if the insurer "discovers that an insured made a material misrepresentation on the application for insurance and that the misrepresentation affected either the acceptance of the risk or the hazard

assumed by the insurer." *Montgomery*, 269 Mich App at 129. Specifically, this Court went on to hold:

> A misrepresentation on an insurance application is material *if, given the correct information, the insurer would have rejected the risk or charged an increased premium. Oade, supra* at 254. Because defendant's underwriter stated in his affidavit that defendant would not have issued the policy if it had been aware of the decedent's smoking habit, the misrepresentation about the decedent's smoking habit was material. If a misrepresentation is material, Michigan law does not require that a causal connection exist between the misrepresentation and the death. [*In re Certified Question* (*Wickersham v John Hancock Mut Life Ins Co*), 413 Mich 57, 63; 318 NW2d 456 (1982).] [*Montgomery*, 269 Mich App at 129 (emphasis added).]

See also *Clark v John Hancock Mut Life Ins Co*, 180 Mich App 695, 699-700; 447 NW2d 783 (1989) (observing that the correct focus of a materiality analysis under MCL 500.2218(1) "is the reliance or nonreliance of the particular insurance company involved.").

The thrust of defendant's motion for summary disposition was that plaintiffs' claim alleging breach of contract was factually deficient because, as a result of DDI's fraudulent misrepresentations in procuring insurance from defendant, the insurance policy was void *ab initio* and was rescinded, rendering it a legal nullity. The party moving for summary disposition meets its burden under MCR 2.116(G)(4) by tendering affirmative evidence undermining a dispositive element of the nonmoving party's cause of action. *Lowrey*, 500 Mich at 7.[4] In support of its position that DDI's misrepresentation of the number of police calls was material, defendant presented the deposition testimony of Stephen Greenfield, defendant's president of operations, and Woodrow White, the underwriter who handled DDI's application for insurance. Both testified unambiguously that defendant would not have insured Bar 153 if they had known that the bar had such extensive police activity in the year preceding submission of its application.[5]

In response, plaintiffs presented evidence intended to bring into question the credibility of Greenfield and White. See *Oade*, 465 Mich at 255 (indicating that a party opposing a (C)(10) motion for summary disposition is "free to bring forth evidence drawing into question the

---

[4] In their brief on appeal, plaintiffs advance a convoluted and difficult to discern argument concerning the shifting burdens of proof when one party moves for summary disposition under MCR 2.116(C)(10). However, in *Lowrey* our Supreme Court fairly recently highlighted and explained the burdens of proof in a (C)(10) analysis and we have adhered to our Supreme Court's instructions in this opinion.

[5] Greenfield testified that the one police call DDI reported on its insurance application, plus any of the other police-call incidents uncovered by defendant's investigation would have resulted in rejection of DDI's application. White testified that if he had known about DDI's history of police involvement, he would not have pursued issuance of a policy.

testimony of [the] defendant's underwriter" in a case in which the materiality of an alleged misrepresentation is at issue). Plaintiffs produced defendant's underwriting guidelines, which made no mention of police calls, and discovery responses in which defendant admitted that the police-calls question did not appear on its online applications for several months after defendant first introduced them. In addition, plaintiffs submitted applications known as Acord applications, which also did not contain a police-calls question. Plaintiffs pointed out that of the 58 insurance application packages defendant provided during discovery, 18 electronic applications for insurance did not include a question concerning prior police calls and 23 paper Acord applications did not contain the police-call question. In plaintiffs' words:

> Forty-one (41) applications of the fifty-eight (58) produced (71%) of all the applications produced in discovery in this case do not contain a "number of police calls in the past year" question. As such, if more than half of the applicants are not asked this specific question, it cannot be a material question in [defendant's] underwriting process.[6]

Plaintiffs argued below and maintain on appeal that, given the evidence they produced, the trial court properly denied defendant's motion for summary disposition because to do otherwise would have required the trial court to make an impermissible credibility determination. See *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994) (stating that the court may not make findings of fact or weigh credibility in deciding a motion for summary disposition); see also *Debano-Griffin v Lake Co*, 493 Mich 167, 180-181; 828 NW2d 634 (2013) (indicating that where justification for an act was established by a witness whose credibility the opposing party's evidence called into question, there was an issue of fact for the finder of fact that precluded summary disposition).

Plaintiffs' argument is unavailing because it focuses too narrowly on the inquiry into the number of police calls without considering that the police-call question has two parts. The query as it appears on the application for insurance is, "Number of police calls within the past year (If any describe in detail)[.]" Thus, in addition to reporting the *number* of calls, applicants must also describe in detail the *nature* of the calls reported. Accordingly, had DDI reported the actual number of police calls to Bar 153 in the year before submitting its insurance application to defendant, it would also have had to reveal at least two incidents of assault and battery. According to its underwriting guidelines, defendant would not insure "[a]ny risk with (2) or more assault or battery incidents in the last 3 years." Defendant's underwriting guidelines support Greenfield and White's testimony that, had DDI answered the police-calls question truthfully and reported two assault and battery incidents in the year prior to applying for insurance with defendant, not to mention the other activities for which police were called to Bar 153, defendant would have rejected the application. Thus, even without Greenfield and White's testimony, the evidence indicates that DDI's representation of the number of police-calls on its insurance application was material because truthfulness would have triggered the underwriting

---

[6] It appears from the record that the majority of these businesses were also operating as bars, although the specific nature of each establishment is not clear.

guidelines' prohibition against insuring a business with two or more incidents of assault and battery in the last three years. *Oade*, 465 Mich at 254 ("A misrepresentation on an insurance application is material if, given the correct information, the insurer would have rejected the risk or charged an increased premium.").

Plaintiffs also contend that the fact that defendant did not ask the police-calls question on all of its applications for insurance is evidence that the question was not material. However, differently worded questions designed to collect information about risk do not bear upon the question of whether, if presented with the information about the multiple prior police calls to Bar 153, defendant would have chosen to issue the particular insurance policy to DDI that is at dispute in this appeal. See *Oade*, 465 Mich at 254 (indicating that the proper materiality question is whether the insurer would have issued the same policy notwithstanding the misrepresented facts). Plaintiffs' proffered evidence, even if accepted as true and accurate by the trier of fact, does not undermine and call into question defendant's repeated assertion, supported by its underwriting guidelines, that had it been aware of the prior police calls to Bar 153, it would have rejected the risk of insuring DDI. *Oade*, 465 Mich at 253-54. In other words, defendant's use of differently worded questions in other applications to collect information relative to risk does not render immaterial the police-calls question in the application DDI completed.

Viewed in the light most favorable to plaintiffs, the evidence does not yield issues on which reasonable minds could differ. Defendant presented evidence that DDI made a representation about police calls that it knew was false, that the representation was material, that it was made with the intent that defendant would rely on it to issue a policy of insurance, that defendant did rely on that misrepresentation when issuing a policy to DDI, and that defendant suffered injury. See *Titan*, 491 Mich at 555. Thus, defendant met its burden to establish that DDI engaged in actionable fraud. *Id.*; *Lowrey*, Mich at 7. Plaintiffs disputed the materiality of the police-calls inquiry by presenting evidence designed to call into question the deposition testimony of Greenfield and White indicating the materiality of the police-calls question by showing that defendant did not ask the same police-calls question on all of its applications for insurance. As explained above, however, plaintiffs' evidence does not set forth facts establishing a genuine issue of material fact for trial regarding the materiality of the police-calls question. *Id.* Accordingly, we conclude that defendant is entitled to summary disposition with respect to DDI's claim for coverage. *Johnson*, 502 Mich at 761.

We next address defendant's argument that it is entitled to summary disposition with respect to GCRE's claim for coverage. In *Bazzi*, our Supreme Court confirmed that an insurer may resort to traditional legal and equitable remedies on the ground of fraud in the application for insurance, including rescission, even when doing so would affect an innocent third party. *Bazzi*, 502 Mich at 401-403. The Supreme Court rejected, however, the defendant insurance company's contention that it was "categorically entitled" to rescission of an insurance policy under circumstances in which an innocent third party was involved. *Id.* at 409. Because the remedy of rescission was equitable in nature, it was not "a matter of right[,]" but could only be granted in the trial court's discretion. *Id.*, quoting *Amster v Stratton*, 259 Mich 683, 686; 244 NW 201 (1932). Specifically, in *Bazzi*, our Supreme Court held:

When a plaintiff is seeking rescission, "the trial court must balance the equities to determine whether the plaintiff is entitled to the relief he or she seeks." *Johnson v QFD, Inc*, 292 Mich App 359, 370 n 3; 807 NW2d 719 (2011). Accordingly, courts are not required to grant rescission in all cases. For example, "rescission should not be granted in cases where the result thus obtained would be unjust or inequitable," *Amster*, 259 Mich at 686, or "where the circumstances of the challenged transaction make rescission infeasible," CJS, § 11, p 507. Moreover, when two equally innocent parties are affected, the court is "required, in the exercise of [its] equitable powers, to determine which blameless party should assume the loss . . . ." [*Lenawee Co Bd of Health v Messerly*, 417 Mich 17, 31; 331 NW2d 203 (1982)]. "[W]here one of two innocent parties must suffer by the wrongful act . . . of another, that one must suffer the loss through whose act or neglect such third party was enabled to commit the wrong." *Zucker v Karpeles*, 88 Mich 413, 430; 50 NW 373 (1891). "The doctrine is an equitable one, and extends no further than is necessary to protect the innocent party in whose favor it is invoked." *Id*.

In this instance, rescission does not function by automatic operation of the law. *Just as the intervening interest of an innocent third party does not altogether bar rescission as an equitable remedy, neither does fraud in the application for insurance imbue an insurer with an absolute right to rescission of the policy with respect to third parties.* Equitable remedies are adaptive to the circumstances of each case, and an absolute approach would unduly hamper and constrain the proper functioning of such remedies. This Court has recognized that "[e]quity jurisprudence molds its decrees to do justice amid all the vicissitudes and intricacies of life" and that "[e]quity allows complete justice to be done in a case by adapting its judgments to the special circumstances of the case." *Tkachik v Mandeville*, 487 Mich 38, 45-46; 790 NW2d 260 (2010) (quotation marks omitted), citing *Spoon-Shacket Co, Inc v Oakland Co*, 356 Mich 151, 163; 97 NW2d 25 [1959], and 27A Am Jur 2d, Equity, § 2, pp 520-521; see also *Lenawee*, 417 Mich at 29 (adopting a case-by-case approach to rescission when a "mistaken belief relates to a basic assumption of the parties upon which the contract is made, and which materially affects the agreed performances of the parties"), and Am Jur 2d, § 2, pp 548-549. [*Bazzi*, 502 Mich at 410-411 (emphasis added).]

Our Supreme Court noted that if the defendant insurance company in that case could not rescind as to the plaintiff third party, but could rescind regarding claims involving only the fraudulent insured, the policy would not be considered fully *rescinded*, but *reformed*. *Id*. at 412 n 12.

In the present case, there is no indication in the record that GCRE was involved in providing information to defendant in support of the application for insurance. The record reflects that Jeffrey Jonna, as president of DDI, the named insured, provided the information to defendant during the insurance application process. Moreover, Jeffrey Jonna testified that David Jonna did not take part in securing insurance for DDI. Under such circumstances, we conclude that remand to the trial court is necessary for it to determine whether rescinding the insurance policy as between defendant and GCRE, named as an additional insured under the general liability section of the policy, would be equitable. See *id*. at 412.

Defendant also argues on appeal that the trial court ought to have granted its motion for summary disposition with respect to plaintiffs' claim seeking reformation of the insurance policy to include GCRE as an insured under the property coverage portion of the policy. Although defendant's motion for summary disposition included this issue, and plaintiffs filed a response, the trial court declined to decide the matter, concluding that the parties had not been adequately briefed it. Given that we are remanding this matter to the trial court, we elect to exercise judicial restraint and leave this issue for the trial court to decide.

We reverse the trial court order denying defendant's motion for summary disposition and remand with instructions that the trial court enter judgment in favor of defendant with regard to DDI's claims only. On remand, we also direct the trial court to consider whether rescission of the insurance policy is appropriate with respect to GCRE and, if not, whether defendant is entitled to summary disposition of plaintiffs' reformation claim.

Reversed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Mark J. Cavanagh
/s/ Jane M. Beckering
/s/ Michael F. Gadola