SMITH v GLOBE LIFE INSURANCE COMPANY

Docket No. 110065. Argued January 21, 1999 (Calendar No. 7). Decided July 13, 1999.

Debra L. Smith, as personal representative of the estate of Robert A. Smith, deceased, brought an action in the Kent Circuit Court, Donald A. Johnston, J., against the Globe Life Insurance Company, alleging breach of contract and violations of the Consumer Protection Act after Globe denied her claim on a credit life policy issued to Robert. The court granted summary disposition for the defendant on the ground that Globe's decision to issue the policy had been materially affected by Robert's misrepresentation of his health. The court also concluded that the act does not apply to activity regulated by the Commissioner of Insurance. The Court of Appeals, GRIBBS, P.J. and MARKEY, J. (T. G. KAVANAGH, J., not participating), reversed. 223 Mich App 264 (1997) (Docket No. 177201). The defendant appeals.

In an opinion by Justice YOUNG, joined by Chief Justice WEAVER, and Justices BRICKLEY, TAYLOR, and CORRIGAN, the Supreme Court *held*:

The defendant was entitled to summary disposition regarding the plaintiff's breach of contract claim. There was no genuine issue of material fact regarding the authenticity of the insurance application. Moreover, under the circumstances of the case, the defendant was not required to establish that it relied on the decedent's misrepresentation when issuing the policy. However, the defendant is not entitled to summary disposition regarding its alleged violations of the Consumer Protection Act. Although subsection 4(1)(a) of the act generally exempts transactions that are specifically authorized by law, subsection 4(2) provides an exception to that exemption by permitting certain private actions to be brought pursuant to § 11. That exception is applicable to the plaintiff's claim.

1. The plaintiff offered no proof that someone other than the decedent answered the health inquiries contained in the insurance application without the decedent's knowledge or direction, and therefore, failed to state a genuine issue of material fact regarding the application's authenticity.

2. The Court of Appeals erred in concluding that under MCL 500.2218; MSA 24.12218 the defendant was required to prove that it relied on the misrepresentations contained in the application for insurance in order to avoid payment under the policy. While a misrepresentation in an insurance application clearly cannot affect an insurer's acceptance of the risk unless the insurer relied on the misrepresentation in issuing the policy, such a misrepresentation materially affects the hazard assumed by an insurer whenever the facts misrepresented are causally connected to the loss. When such a causal relationship exists, an insurer is entitled to rescind the policy under MCL 500.2218; MSA 24.12218 even without a showing of reliance. In this case, it is beyond question the misrepresentation was causally connected to the loss, and that it materially affected the hazard assumed, regardless of whether defendant actually relied on that misrepresentation.

3. Subsection 4(1)(a) of the Consumer Protection Act generally exempts the sale of insurance from the act's provisions because such transaction or conduct is specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of Michigan or the United States. The relevant inquiry is not whether the specific misconduct alleged by the plaintiffs was specifically authorized; rather, it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited. Subsection 4(2)(a) specifically exempts from the act unfair, unconscionable, or deceptive methods, acts, or practices made unlawful by chapter 20 of the Insurance Code. Giving effect to both sections, it must be concluded that private actions are permitted against an insurer pursuant to § 11 of the act regardless of whether the insurer's activities are specifically authorized. These exemptions are inapplicable to plaintiff's claims to the extent that they involve allegations of misconduct made unlawful under chapter 20 of the Insurance Code.

Justice KELLY, concurring in part and dissenting in part, stated that the defendant is not entitled to summary disposition with regard to the breach of contract claim because Mr. Smith made a material misrepresentation in the insurance application, absent a showing that it relied on the misrepresentation.

When a material misrepresentation of fact affects acceptance of the risk or hazard assumed by an insurer, MCL 500.2218; MSA 24.12218 permits an insurer to void the policy. But subsection 2218(2) expressly requires an insurer to establish that the prospective insured misrepresented a fact that induced the insurer to contract. Thus, an express reference to reliance would be surplusage.

To void a policy, an insurer must establish that a misrepresentation in fact was made, the misrepresentation was material to the acceptance of risk or hazard assumed by the insurer, and the insurer relied on the misrepresentation. In this case, the defendant had the burden of establishing the absence of a genuine issue of material fact regarding the required elements and supporting its position by affidavits, depositions, admissions, or other documentary evidence. Although the defendant submitted an affidavit by a former underwriter to support its claim that the misrepresentation was material to its acceptance of the risk or hazard assumed, and although the affidavit stated that the defendant would have refused to insure Smith had it been aware of his medical condition at the time it issued the policy, the defendant failed to allege that it was deceived by Smith's misrepresentation and failed to declare that it received the application before insuring the plaintiff or that it relied on it. The defendant, thus, failed to meet its burden of establishing reliance on the misrepresentation and failed to establish a misrepresentation under subsection 2218(2), and, thus, was not entitled to summary disposition on its breach of contract claim.

Justice CAVANAGH, concurring in part and dissenting in part, stated that because the insurer has failed to provide evidence that its conduct, using inconsistent insurance eligibility forms in a single transaction, is specifically authorized, it is not exempt from suit under subsection 4(1)(a) of the MCPA. Also, because the plaintiff is a person filing under § 11, the defendant is not exempt under subsection 4(2).

Affirmed in part, reversed in part, and remanded.

*Murray, Pawlowski & Flakne, L.L.P.* (by *Susan B. Flakne*), for plaintiff-appellee.

*Honigman, Miller, Schwartz & Cohn* (by *Sandra L. Jasinski*), for defendant-appellant.

Amicus Curiae:

*Butzel, Long* (by *David H. Oermann* and *Norman A. Yatooma*) for Life Insurance Association of Michigan.

YOUNG, J. This case involves a dispute regarding defendant insurer's avoidance of a credit life and disability insurance policy on the ground that the insured

made misrepresentations concerning his health on the application.

We granted leave in this case to determine whether defendant Globe Life Insurance Company is entitled to summary disposition with regard to plaintiff Debra L. Smith's complaint alleging: (1) breach of contract involving the credit life and disability insurance policy, and (2) violations of the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.;* MSA 19.418(1) *et seq.,* concerning the manner in which defendant represented the benefits and conditions of the policy in question.

Reversing the Court of Appeals in part, we conclude that defendant is entitled to summary disposition regarding plaintiff's breach of contract claim. Defendant's evidence established that plaintiff's deceased father, Robert Smith, made material misrepresentations in his insurance application. Contrary to the Court of Appeals conclusion, there is no genuine issue of material fact regarding the application's authenticity. In addition, defendant was not required to establish that it issued the insurance policy in reliance on Smith's misrepresentations.

However, we agree with the Court of Appeals that defendant is not entitled to summary disposition regarding its alleged violations of the Michigan Consumer Protection Act. Although § 4(1)(a) of the act generally exempts from the MCPA transactions that are "specifically authorized" by law, § 4(2) provides an exception to that exemption by permitting certain private actions to be brought pursuant to § 11. That exception is applicable to plaintiff's claim.

Accordingly, we affirm in part and reverse in part the judgment of the Court of Appeals.

I. FACTUAL AND PROCEDURAL BACKGROUND

On December 4, 1992, plaintiff's deceased father, Robert Smith, bought a new truck financed through Ford Motor Credit Company (FMCC). At the time, Smith was forty-seven years old and employed full-time. As part of his financing package, he purchased a combined credit life and disability policy issued by defendant. Only the credit life insurance policy is at issue here. The certificate of insurance provided the following eligibility requirements:

> Who is eligible for life insurance: On the Date of Debt you and any Co-Debtor must each: (i) owe the Debt; (ii) be fully capable of being actively at work for wages or profit at least 30 hours per week; and (iii) be less than 71 years old. At the end of the Term of Insurance, you and any Co-Debtor must each be less than 71 years old.

On Smith's application for insurance, slash marks had been made in boxes labeled "NO" as responses to the following inquiries:

> 1. Have you been medically diagnosed as having and are you receiving treatment for:
> a. Any condition of the heart, brain, liver, kidney, lungs, cancer or any malignant growth?
> b. Diabetes, high blood pressure, circulatory disorders, neurological disorders, mental disorders or disorders of the back or neck?

Above Smith's signature, the application also warned:

> Answer all questions honestly and truthfully, misrepresentation is a basis for denial of benefits. Any underwriting decision based on this evidence of insurability shall be made within 60 days from the date of this application.

The credit life insurance policy provided in relevant part that defendant would be responsible for the balance due on the FMCC loan if Smith died while the policy was in force.

Smith had made two payments on the FMCC loan when he suffered a fatal heart attack on January 27, 1993. As personal representative of her father's estate, plaintiff notified defendant of Smith's death and made a claim for benefits pursuant to the certificate of insurance. Defendant denied coverage, asserting that the policy was void because Smith had misrepresented his state of health on the application. Defendant rescinded the policy, returning premiums paid for the policy to the car dealership.

After defendant denied the claim, plaintiff filed a complaint alleging breach of contract and violations of the Michigan Consumer Protection Act.[1] Relying on conditions of coverage provided in the certificate of insurance quoted above, count I alleged that defendant was aware that decedent met the conditions and denied his claim in bad faith. Count II alleged that defendant misrepresented the advantages, benefits, terms, and conditions of the insurance policy in violation of the MCPA.

In its motion for summary disposition, defendant claimed it would not have insured Smith had it been aware of his true medical background. In support of its motion, defendant submitted: (1) a copy of Smith's application revealing negative responses to the aforementioned health inquiries, (2) medical records establishing Smith had been diagnosed with coronary heart

---

[1] MCL 445.903(1)(g), (n), (s), (bb), (cc); MSA 19.418(3)(1)(g), (n), (s), (bb), (cc).

disease in 1986 and was being treated for this condition at the time of his death, (3) interrogatory responses establishing Smith was an insulin-dependent diabetic, and (4) an affidavit by a former underwriter who claimed defendant would have denied the certificate of insurance had it been aware of Smith's condition at the time he applied for coverage.

Opposing the motion, plaintiff submitted an affidavit and claimed: (1) the slash marks through the "NO" responses were not in Smith's handwriting, and (2) defendant failed to proffer evidence establishing that it had received the insurance application when the insurance policy was issued. Plaintiff also claimed that she was not bound by any statements made in the application and that defendant was precluded from admitting the application into evidence because the application was not attached to plaintiff's certificate of insurance.

The trial court granted the motion for summary disposition pursuant to MCR 2.116(C)(10). It concluded: (1) an insurer is not obligated to attach the application to the certificate of insurance, (2) Smith had not truthfully answered the application inquiries, and (3) the signature appeared authentic. The trial court noted that there was a question whether Smith authored the slash marks through the "NO" boxes on the application. However, the court concluded that the issue was "largely beside the point" because the answers appeared to be "adoptively [Smith's]."

Addressing the MCPA claims, the trial court concluded that the MCPA does not apply to activity regulated by the State Commissioner of Insurance, citing *Kekel v Allstate Ins Co*, 144 Mich App 379; 375 NW2d

455 (1985). Accordingly, the trial court dismissed plaintiff's complaint.

The Court of Appeals reversed. 223 Mich App 264, 266; 565 NW2d 877 (1997). It concluded that there was no genuine issue of material fact regarding the authenticity of Smith's signature. However, the Court held that a factual question existed regarding whether Smith had authored the slash marks through the "NO" boxes and whether defendant had received and relied on the application when issuing the policy.

Addressing whether defendant was exempt from the alleged violations of the MCPA, the Court of Appeals considered § 4(1)(a) of the act which provides:

> This act does not apply to . . . the following:
> (a) A transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States. [MCL 445.904(1); MSA 19.418(4)(1).]

It concluded that a "common-sense reading" of the language reveals that the Legislature did not intend to exempt illegal conduct. *Id.* at 281, citing *Attorney General v Diamond Mortgage Co*, 414 Mich 603; 327 NW2d 805 (1982). Concluding that *Kekel* erroneously interpreted § 4(1)(a), the Court of Appeals held, as a matter of law, that defendant was not entitled to summary disposition. *Id.* at 282-283.

The Court also concluded that *Kekel* erroneously interpreted § 4(2) of the MCPA, which reads:

> Except for the purposes of an action filed by a person under [MCL 445.911; MSA 19.418(11)], this act does not apply to an unfair, unconscionable, or deceptive method, act, or practice that is made unlawful by:

(a) Chapter 20 of the insurance code of 1956, Act No. 218 of the Public Acts of 1956, as amended, being sections 500.2001 to 500.2093 of the Michigan Compiled Laws. [MCL 445.904(2); MSA 19.418(4)(2).]

The Court reasoned that, while § 4(2)(a) generally exempts from the MCPA deceptive acts made unlawful by chapter 20 of the Insurance Code, the first phrase of § 4(2) expressly permits private actions to be brought pursuant to § 11.

## II. ANALYSIS

A 'motion for summary disposition under MCR 2.116(C)(10), which tests the factual support of a claim, is subject to de novo review. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998).

This Court in *Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996), set forth the following standards for reviewing motions for summary disposition brought under MCR 2.116(C)(10):

> In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4).

In presenting a motion for summary disposition, the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. *Neubacher v Globe Furniture Rentals*, 205 Mich App 418, 420; 522 NW2d 335 (1994). The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. *Id.* Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. *McCart v J Walter Thompson*, 437 Mich 109, 115; 469 NW2d 284 (1991). If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. *McCormic v Auto Club Ins Ass'n*, 202 Mich App 233, 237; 507 NW2d 741 (1993).[2]

---

[2] We take this occasion to note that a number of recent decisions from this Court and the Court of Appeals have, in reviewing motions for summary disposition brought under MCR 2.116(C)(10), erroneously applied standards derived from *Rizzo v Kretschmer*, 389 Mich 363; 207 NW2d 316 (1973). These decisions have variously stated that a court must determine whether a record "might be developed" that will leave open an issue upon which reasonable minds may differ, see, e.g., *Farm Bureau Mut Ins Co of Michigan v Stark*, 437 Mich 175, 184; 468 NW2d 498 (1991); *First Security Savings Bank v Aitken*, 226 Mich App 291, 304; 573 NW2d 307 (1997); *Osman v Summer Green Lawn Care, Inc*, 209 Mich App 703, 706; 532 NW2d 186 (1995), and that summary disposition under MCR 2.116(C)(10) is appropriate only when the court is satisfied that "it is impossible for the nonmoving party to support his claim at trial because of a deficiency that cannot be overcome." *Paul v Lee*, 455 Mich 204, 210; 568 NW2d 510 (1997); *Horton v Verhelle*, 231 Mich App 667, 672; 588 NW2d 144 (1998).

These *Rizzo*-based standards are reflective of the summary judgment standard under the former General Court Rules of 1963, not MCR 2.116(C)(10). See *McCart, supra* at 115, n 4. Under MCR 2.116, it is no longer sufficient for plaintiffs to *promise to offer* factual support for their claims at trial. As stated, a party faced with a motion for summary disposition brought under MCR 2.116(C)(10) is, in responding to the motion,

### A. BREACH OF CONTRACT

As stated, the Court of Appeals held that two factual issues precluded the trial court's grant of summary disposition to defendant: (1) whether Smith had authored the slash marks through the "NO" boxes on the application, and (2) whether defendant had relied on the application when issuing the policy. We disagree on both points.

First, the Court of Appeals erred in holding that there was a question of material fact regarding whether Smith "made or caused to be made the marks in the box describing the state of his health . . . ." 223 Mich App 275. Defendant submitted a copy of the completed application bearing Smith's signature immediately below the provision warning that all questions must be answered "honestly and truthfully." Plaintiff does not dispute that the signature on the insurance application is Smith's.

In an attempt to rebut defendant's prima facie showing, plaintiff stated in her affidavit that the slash marks placed through the "YES" and "NO" boxes on the application "are not in my father's handwriting." Plaintiff essentially suggests that Smith may have signed the application in blank and that someone at the dealership filled in the boxes as shown in the application. This Court in *General American Life Ins*

required to present evidentiary proofs creating a genuine issue of material fact for trial. Otherwise, summary disposition is properly granted. MCR 2.116(G)(4).

Consequently, those prior decisions of this Court and the Court of Appeals that approve of *Rizzo*-based standards for reviewing motions for summary disposition brought under MCR 2.116(C)(10) are overruled to the extent that they do so.

*Co v Wojciechowski*, 314 Mich 275, 283; 22 NW2d 371 (1946), rejected a similar attempt to avoid an insurer's claim of misrepresentation voiding an insurance contract:

> Appellant claims that there was no showing that [the insured] made the statements found in the application over his signature, that the application might have been signed in blank, and that it might be inferred that the answers had been written in after the application was signed. Defendant offered no proof bearing on this issue and conceded that the signature to the application was that of [the insured]. A copy of the application was attached to the bill of complaint and its authenticity was not denied by the defendant. A prima facie showing was thus made by the [insurer], and the circuit judge correctly concluded that in the absence of any proof to that effect the court would not be justified in finding that a fraud had been perpetrated on either the insurer or the insured, by someone who might have filled in the answers unknown to [the insured].

As in *Wojciechowski*, plaintiff's argument here constitutes mere speculation, not a reasonable inference from the evidence, and thus does not rise to the level of creating a genuine issue of material fact for trial. Because plaintiff has offered no proof that someone else answered the health inquiries contained in the application without Smith's knowledge or direction, plaintiff has failed to create a genuine issue of material fact regarding the application's authenticity.[3]

Second, we agree with defendant that the Court of Appeals erred in concluding that, under MCL 500.2218; MSA 24.12218, defendant was required to

---

[3] Because plaintiff failed to rebut defendant's prima facie showing, the Court of Appeals erred in holding that defendant was required to submit additional evidence.

prove that it relied on the misrepresentations contained in Smith's application for insurance. We review de novo questions involving statutory interpretation. *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626, 631; 563 NW2d 683 (1997).

MCL 500.2218; MSA 24.12218 limits the right of an insurer to rescind an insurance policy on the basis of false statements made in the insurance application. The statute provides in relevant part:

> The falsity of any statement in the application for any disability insurance policy covered by chapter 34 of this code may not bar the right to recovery thereunder unless such false statement *materially affected either the acceptance of the risk or the hazard assumed by the insurer*. [MCL 500.2218; MSA 24.12218 (emphasis added).]

This Court has not had occasion to address directly whether § 2218 requires an insurer to show that it actually relied upon a false statement made in an insurance application before the insurer may avoid payment under the policy.[4] The Court of Appeals imposed such a requirement in *Howard v Golden State Mut Life Ins Co*, 60 Mich App 469, 477; 231 NW2d 655 (1975). See also *United of Omaha Life Ins Co v Rex Roto Corp*, 126 F3d 785, 787 (CA 6, 1997); *Auto-Owners Ins Co v Comm'r of Ins*, 141 Mich App 776, 781, n 3; 369 NW2d 896 (1985). However, it is

---

[4] Some of our past decisions arguably have implied such a requirement. See, e.g., *Manufacturers Life Ins Co v Beardsley*, 365 Mich 308, 311; 112 NW2d 514 (1961); *Prudential Ins Co of America v Ashe*, 266 Mich 667, 671-672; 254 NW 243 (1934); *Nat'l Life & Accident Ins Co v Nagel*, 260 Mich 635, 638; 245 NW 540 (1932).

clear that the *Howard* Court never considered the precise language used in the statute.[5]

As an initial matter, we find it significant that § 2218 does not expressly mention reliance. Moreover, while the insurer, under § 2218, necessarily must have relied on a false statement in an insurance application in order for such a statement to have materially affected the insurer's "acceptance of the risk," the statute also permits the insurer to rescind the policy if the false statement materially affected the "hazard assumed" by the insurer. In *In re Certified Question, Wickersham v John Hancock Mut Life Ins Co*, 413 Mich 57, 63; 318 NW2d 456 (1982), we recognized that the Legislature's use of "either" and "or" indicates that the terms "acceptance of the risk" and "hazard assumed" have different meanings. We must give effect to both terms in order to avoid rendering either term mere surplusage. *Smith v Employment Security Comm*, 410 Mich 231, 250; 301 NW2d 285 (1981).

As we explained in *Wickersham, supra* at 63:

> Acceptance of the risk refers to the time of making of the contract of insurance and to the insurance concept of risk. Whether an insurer determines to enter into a contract is affected by its assessment of the likelihood of a fact increasing the chances of the loss insured against.

---

[5] Justice KELLY's dissent, *post* at 472, finds the *Howard* decision to be persuasive in interpreting the statute because the *Howard* Court adopted a reliance requirement "immediately after quoting § 2218." However, we believe it clear that the "test" that was "formulated" by the Court of Appeals in *Howard* was not based upon the language of the statute, but drawn from a law review article "and cases therein footnoted." *Howard, supra* at 477.

On the other hand, the term "hazard assumed" refers to the circumstances of the loss. *Id.* at 62. In order for a misstatement to be material to the hazard assumed, the misstatement " 'must be shown in some way to have affected [the hazard] or contributed to the loss . . . .' " *Id.* at 62, quoting *Prudential Ins Co of America v Saxe*, 77 US App DC 144, 156; 134 F2d 16 (1943).    Thus, in *Wickersham, supra* at 63, we observed that the insured's undisclosed heart problems did not affect or contribute to the hazard assumed because the insured died in a swimming accident.[6]

Accordingly, while a misrepresentation in an insurance application clearly cannot affect an insurer's

---

[6] Justice KELLY's dissent, *post* at 470-471, claims that we have avoided what clearly is *Wickersham's* discussion of the meaning of § 2218's *materiality* requirement. See MCL 500.2218(1); MSA 24.12218(1) ("No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make the contract"). That argument highlights the dissent's fundamental misunderstanding of § 2218. On its face, the statute's materiality provision plainly requires that the insurer demonstrate, in hindsight, that it "would have" refused to issue the policy if it had known the facts misrepresented. Such a post hoc determination simply has nothing to do with whether the insurer *in fact* relied on the misrepresentation when issuing the policy. Thus, the *Wickersham* Court's "analysis" to which the dissent refers is wholly inapposite.

The dissent, *post* at 471, further argues that § 2218(2) "expressly requires an insurer to establish that the prospective insured misrepresented a fact that *induced* the insurer to contract . . . ." Thus, claims the dissent, "an express reference to reliance would be surplusage." *Id.* The statute clearly does *not* state that the misrepresentation must have induced the insurer to contract. Rather, it simply defines a representation as one that is made "as an inducement to the making" of a contract.

While that distinction obviously eludes the dissent, we believe it to be an important one. Clearly, an applicant may make a misrepresentation "as an inducement to the making" of a contract without the inducement actually causing the insurer to contract. Our construction, contrary to the dissent's, gives meaning to the Legislature's use of "either" and "or," which use, as stated, indicates that the terms "acceptance of the risk" and "hazard assumed" have different meanings.

"acceptance of the risk" unless the insurer relied on the misrepresentation in issuing the policy, we conclude that such a misrepresentation materially affects the "hazard assumed" by an insurer whenever the facts misrepresented are causally connected to the loss. When such a causal relationship exists, an insurer is entitled to rescind the policy under § 2218 even without a showing of reliance.[7]

In this case, Smith misrepresented his health, stating that he did not have a heart condition. In fact, Smith died of a heart attack. Under these circumstances, it is beyond question that Smith's misrepresentation is causally connected to the loss. The misrepresentation materially affected the hazard assumed, Smith's death, regardless of whether

---

[7] Justice KELLY's dissent, *post* at 472, claims that we have cited *Wickersham* "for the proposition that a misrepresentation affecting the hazard assumed by the insurer, as distinguished from the risk accepted, does not require reliance." The dissent further accuses us of "omitting portions of *Wickersham*, and misconstruing the remainder . . . ." *Post* at 474.

We do not suggest that *Wickersham* in any way addressed the reliance issue presented here. We simply find instructive to our interpretation of § 2218 the fact that the *Wickersham* Court, albeit in another context, recognized and gave effect to the conceptual difference between "acceptance of the risk" and "hazard assumed." Interestingly, the dissent does not offer its own construction of these key statutory phrases. We similarly reject the dissent's determined effort, *post* at 474, to make dicta in *Wickersham* a holding by observing that the *Wickersham* Court's passing mention of reliance was a "pointed reference." Whether the *Wickersham* Court's reference to reliance was "pointed" or otherwise, it is clear that the reference is dicta. Clearly, reliance was not the issue *Wickersham* decided, and its fleeting mention of reliance did not constitute a considered analysis of the statutory terms at issue here.

Justice KELLY's dissent, *post* at 473, n 7, also accuses us of ignoring the meaning of the word "affect" "by failing to explain how a misrepresentation, which may never have been received by the insurer, affected the hazard assumed." As explained in the text, because the phrase "hazard assumed" refers to the *circumstances of the loss* rather than the *time of making of the contract*, a misrepresentation that is causally connected to the loss "affects" the "hazard assumed" regardless of whether the insurer actually relied on the misrepresentation in issuing the policy.

defendant actually relied on that misrepresentation. Therefore, under § 2218, defendant was not required to establish reliance in order to avoid payment under the policy.

Accordingly, we reverse the Court of Appeals decision on the breach of contract claim and reinstate the trial court's order granting summary disposition to defendant.

### B. MICHIGAN CONSUMER PROTECTION ACT

Turning to the issue whether defendant is exempted from plaintiff's claim of MCPA violations, we first examine whether defendant is exempted by § 4(1)(a). The language of § 4(1)(a) provides that the MCPA is inapplicable to a "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state . . . ." MCL 445.904(1); MSA 19.418(4)(1). Defendant asserts that its application and certificate of insurance forms were submitted to[8] and implicitly approved by[9] the State Commissioner

---

[8] MCL 550.612; MSA 24.568(12) provides:

All policies, certificates of insurance, notices of proposed insurance, applications for insurance, binder, endorsements and riders shall be filed with the commissioner of the state in which the policy is issued.

[9] MCL 550.613; MSA 24.568(13) provides:

The commissioner within 30 days after the filing of all policies, certificates of insurance, notices of proposed insurance, applications for insurance, binders, endorsements and riders, in addition to other requirements of law, may disapprove any such form if the benefits provided therein are not reasonable in relation to the premium charge or if it contains provisions which are unjust, unfair, inequitable, misleading, deceptive or encourage misrepresentation of such policy.

of Insurance. Hence, it contends, the immediate transaction, the sale of credit life insurance, was "specifically authorized" and, therefore, was exempted under § 4(a)(1).[10] Plaintiff, however, essentially responds that the statute does not specifically authorize the *fraudulent* insurance practices that she claims were committed in this case.

As the Court of Appeals recognized, our decision in *Diamond Mortgage*[11] controls the resolution of this issue. In *Diamond Mortgage*, the defendant, a real estate broker, also advertised and offered loans to homeowners at an eleven percent interest rate. The financing arrangement resulted in the defendant receiving a "brokerage or prepaid finance fee" that the Attorney General alleged was actually an interest charge and, moreover, usurious. *Id.* at 607. The Attorney General also claimed that the defendant used confusing and inconsistent forms and that its method of doing business violated the MCPA. *Id.*

The defendant in *Diamond Mortgage* argued that it was exempt from the MCPA under § 4(1)(a) because it had a real estate broker's license and that one of the activities contemplated was that a licensee would negotiate the mortgage of real estate. *Id.* at 616. Like plaintiff here, the defendants in *Diamond Mortgage* responded that "no statute [or regulatory agency] specifically authorize[d] misrepresentations or false promises" made in conducting that activity. *Id.* at 617.

---

[10] See also the Credit Insurance Act, MCL 550.601 *et seq.*; MSA 24.568(1) *et seq.* Section 2 of the act provides, in relevant part: "All life insurance and all accident and health insurance sold in connection with loans or other credit transactions shall be subject to the provisions of this act . . . ."

[11] *Supra* at 617.

In concluding that the defendants were not exempt from the MCPA, this Court reasoned:

> While the license generally authorizes Diamond to engage in the activities of a real estate broker, it does not specifically authorize the conduct that plaintiff alleges is violative of the Michigan Consumer Protection Act, nor transactions that result from that conduct. In so concluding, we disagree that the exemption of § 4(1) becomes meaningless. While defendants are correct in stating that no statute or regulatory agency specifically authorizes misrepresentations or false promises, the exemption will nevertheless apply where a party seeks to attach such labels to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." For this case, we need only decide that a real estate broker's license is not specific authority for all the conduct and transactions of the licensee's business. [*Id.* at 617.]

In short, *Diamond Mortgage* instructs that the focus is on whether the transaction at issue, not the alleged misconduct, is "specifically authorized." Thus, the defendant in *Diamond Mortgage* was not exempt from the MCPA because the transaction at issue, mortgage writing, was not "specifically authorized" under the defendant's real estate broker's license.

Applying this analysis in *Kekel*, the Court of Appeals concluded that the defendant insurer in that case was exempted from the plaintiff's alleged violations of the MCPA pursuant to MCL 445.903; MSA 19.418(3). It explained:

> *Diamond* is distinguishable from the case at bar. The activities of the defendant in *Diamond* which the plaintiffs there were complaining of were not subject to any regulation under the real estate broker's license of the defendant and thus such conduct was not reviewable by the applica-

ble licensing or regulatory authority. . . . The insurance industry is under the authority of the State Commissioner of Insurance and subject to the extensive statutory and regulatory scheme, all administered "by a regulatory board or officer acting under statutory authority of this state." [*Id.* at 384, citing MCL 445.904(1)(a); MSA 19.418(4)(1)(a).]

Consistent with these rulings, we conclude here that, when the Legislature said that transactions or conduct "specifically authorized" by law are exempt from the MCPA, it intended to include conduct the legality of which is in dispute. Contrary to the "common-sense reading" of this provision by the Court of Appeals, we conclude that the relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is "specifically authorized." Rather, it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited. Therefore, we conclude that § 4(1)(a) generally exempts the sale of credit life insurance from the provisions of the MCPA, because such "transaction or conduct" is "specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."[12] As a consequence, we

---

[12] Citing *Temborius v Slatkin*, 157 Mich App 587; 403 NW2d 821 (1986), Justice CAVANAGH's concurrence, *post* at 480, argues that, "under the majority's interpretation of 'transaction or conduct,' the defendant's conduct [in *Temborius*] would be exempt [from the MCPA] under subsection 4(1)(a) because the sale of automobiles is specifically authorized by the Secretary of State . . . ." The concurrence, *post* at 480-481, further invites us to "provide meaningful examples where a consumer would not be blocked by subsection 4(1)(a) . . . ."

We need not reach or otherwise address consumer transactions that are not before us because it is clear *in this case* that the sale of credit life insurance *is* "specifically authorized" under the Credit Insurance Act, which is administered by the insurance commissioner. See MCL 550.601 *et seq.*; MSA 24.568(1) *et seq.*; see also MCL 500.402; MSA 24.1402 ("No per-

reverse the judgment of the Court of Appeals, in part, on this issue.

However, we agree with the Court of Appeals that the *Kekel* Court misconstrued § 4(2) of the MCPA. In addition to the broad exemption provided in § 4(1)(a), § 4(2) provides in relevant part:

> Except for the purposes of an action filed by a person under [MCL 445.911; MSA 19.418(11)], this act does not apply to an unfair, unconscionable, or deceptive method, act, or practice that is made unlawful by:
>
> (a) Chapter 20 of the insurance code of 1956, Act No. 218 of the Public Acts of 1956, as amended, being sections 500.2001 to 500.2093 of the Michigan Compiled Laws. [MCL 445.904(2); MSA 19.418(4)(2).]

Thus, § 4(2)(a) specifically exempts from the MCPA unfair, unconscionable, or deceptive methods, acts, or practices made unlawful by chapter 20 of the Insurance Code.[13] Yet, the first phrase of § 4(2) explicitly provides that the exemption is inapplicable to actions filed under § 11 of the MCPA, which provides in relevant part:

> (1) Whether or not he seeks damages or has an adequate remedy at law, a person may bring an action to do either or both of the following:
>
> (a) Obtain a declaratory judgment that a method, act, or practice is unlawful under section 3.

---

son shall act as an insurer and no insurer shall issue any policy or otherwise transact insurance in this state except as authorized by a subsisting certificate of authority granted to it by the commissioner pursuant to this code"); MCL 500.200; MSA 24.1200 ("There is hereby established a separate and distinct state department which shall be especially charged with the execution of the laws in relation to insurance"). Thus, it is clear that, contrary to the position of the concurrence, *post* at 480, insurance companies are not "[l]ike most businesses."

[13] See, generally, MCL 500.2001 *et seq.*; MSA 24.12001 *et seq.*

(b) Enjoin in accordance with the principles of equity a person who is engaging or is about to engage in a method, act, or practice which is unlawful under section 3.

(2) Except in a class action, a person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees. [MCL 445.911; MSA 19.418(11).]

Giving effect to both § 4(1) and § 4(2), we conclude that private actions are permitted against an insurer pursuant to § 11 of the MCPA regardless of whether the insurer's activities are "specifically authorized." Although § 4(1)(a) generally provides that transactions or conduct "specifically authorized" are exempt from the provisions of the MCPA, § 4(2) provides an exception to that exemption by permitting private actions pursuant to § 11 arising out of misconduct made unlawful by chapter 20 of the Insurance Code. Therefore, the exemptions provided by §§ 4(1)(a) and 4(2)(a) are inapplicable to plaintiff's MCPA claims to the extent that they involve allegations of misconduct made unlawful under chapter 20 of the Insurance Code.

For these reasons, we conclude that defendant is not entitled to summary disposition with regard to plaintiff's MCPA claims. To the extent that *Kekel* and its progeny[14] are inconsistent with this holding, they are overruled.

### III. CONCLUSION

We reverse the Court of Appeals decision on the breach of contract claim. There is no genuine issue of

---

[14] See *Bell v League Life Ins Co*, 149 Mich App 481; 387 NW2d 154 (1986).

material fact regarding the authenticity of the insurance application. Moreover, under the circumstances of this case, defendant was not required to establish that it relied on Smith's misrepresentation when issuing the policy. Therefore, the trial court's grant of summary disposition for defendant on the breach of contract claim is reinstated.

We affirm the Court of Appeals in part and reverse in part with regard to the alleged violations of the MCPA. Contrary to the Court of Appeals conclusion, § 4(1)(a) exempts the sale of insurance from the provisions of the MCPA. However, we agree with the Court of Appeals that § 4(2) provides an exception to that exemption by permitting private actions pursuant to § 11. Therefore, defendant is not entitled to summary disposition of plaintiff's MCPA claims. This case is remanded to the trial court for further proceedings.

WEAVER, C.J., and BRICKLEY, TAYLOR, and CORRIGAN, JJ., concurred with YOUNG, J.

KELLY, J. (*concurring in part and dissenting in part*). In addition to joining Justice CAVANAGH's dissenting opinion regarding plaintiff's Michigan Consumer Protection Act claim, I respectfully dissent from the majority's resolution of plaintiff's breach of contract claim. I disagree that defendant is entitled to summary disposition[1] because Robert Smith made a

---

[1] I also dissent from the majority's attempt to create a new standard for reviewing motions for summary disposition under the guise of *McCart v J Walter Thompson USA, Inc*, 437 Mich 109, 115, n 4; 469 NW2d 284 (1991). In *McCart*, this Court explained:

[A] mere promise to offer factual support at trial was categorized as a "pleading" under the pre-1985 court rules, see e.g., *Rizzo v Kretschmer*, 389 Mich 363, 377; 207 NW2d 316 (1973), and, as such,

material misrepresentation in an insurance application, absent any showing that defendant relied on the misrepresentation.

When a material misrepresentation of fact affects acceptance of the risk or hazard assumed by an insurer, MCL 500.2218; MSA 24.12218 permits the insurer to void the policy. *Wiedmayer v Midland Mut Life Ins Co*, 414 Mich 369, 374; 324 NW2d 752 (1982). The statute provides, in pertinent part:

> The falsity of any statement in the application for any disability insurance policy covered by chapter 34 of this code may not bar the right to recovery thereunder unless such

---

is precisely what is now insufficient under the new requirements of MCR 2.116(G)(4), enacted in 1985.

The observation addressed nothing more than the production of documentary evidence sufficient to survive a motion for summary disposition. But the majority here, without providing supporting authority, intimates that the observation rejected the longstanding rule regarding the standard for reviewing motions for summary disposition under MCR 2.116(C)(10). Michigan appellate courts have interpreted the rule in a consistent fashion for the past thirteen years. The interpretation is that an award of summary disposition is inappropriate unless it is impossible for the nonmoving party to support its claim at trial because of a deficiency that cannot be overcome. *Lytle v Malady (On Rehearing)*, 458 Mich 153, 176; 579 NW2d 906 (1998) (WEAVER, J.); *Paul v Lee*, 455 Mich 204, 210; 568 NW2d 510 (1997); *Horton v Verhelle*, 231 Mich App 667, 672; 588 NW2d 144 (1998); *Berry v J & D Auto Dismantlers, Inc*, 195 Mich App 476, 479; 491 NW2d 585 (1992); *Dzierwa v Michigan Oil Co*, 152 Mich App 281, 284; 393 NW2d 610 (1986). In fact, in *McCart* itself, we reiterated the continuing vitality of the previous standard of review by citing with approval the decision in *Ewers v Stroh Brewery Co*, 178 Mich App 371; 443 NW2d 504 (1989). In that case, the Court of Appeals provided, "[b]efore judgment may be granted, the court must be satisfied that it is impossible for the claim asserted to be supported by evidence at trial." *Id.* at 374. Therefore, although courts are now required to review documentary evidence as provided in *McCart*, MCR 2.116(C)(10), when adopted, did not alter the way this evidence is to be examined. The majority provides no rationale for rejecting our consistent interpretation of a longstanding court rule. Therefore, I dissent from what, regrettably, amounts to an attempt to lower the bar for granting summary disposition.

false statement materially *affected either* the acceptance of the risk or the hazard assumed by the insurer.

(1) No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless the misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make the contract.

(2) A representation is a statement as to past or present fact, made to the insurer by or by the authority of the applicant for insurance or the prospective insured, *at or before the making of the insurance contract as an inducement to the making thereof.* A misrepresentation is a false representation, and the facts misrepresented are those facts which make the representation false. [MCL 500.2218; MSA 24.12218 (emphasis added).]

Although the majority finds it "significant that § 2218 does not expressly mention reliance," and purports to rely on *In re Certified Question, Wickersham v John Hancock Mut Life Ins Co*[2] as authority for its holding, it avoids the following analysis in *Wickersham*:

A review of *all* the subsections under this statute fails to support the claim of plaintiff that a causal relation between the false statement and loss is required. In 1957, the Legislature amended MCL 500.2218; MSA 24.12218 by adding the four numbered paragraphs to this section. 1957 PA 91. The added paragraphs, in part, define misrepresentation and materiality. *These additional provisions further indicate a legislative intent to determine materiality at the time the insured signs the application and the insurer decides whether to issue a policy to the applicant.*

\*   \*   \*

---

[2] 413 Mich 57; 318 NW2d 456 (1982).

That materiality is to be tested *well before* the loss occurs is also demonstrated by subsection (2). This statutory language defines representation and misrepresentation as a statement "at or before the making of the insurance contract as an inducement to the making thereof." [*Id.* at 65 (emphasis added).][3]

Because § 2218(2) expressly requires an insurer to establish that the prospective insured misrepresented a fact that *induced*[4] the insurer to contract, an express reference to reliance would be surplusage.

---

[3] In *Wickersham*, this Court expressly noted that "the Legislature has limited in other ways an insurer's power to avoid an insurance policy on grounds of material misrepresentation." *Id.*, 66. Citing MCL 500.4014; MSA 24.14014, this Court explained that an insurance policy "generally 'shall be incontestable after it shall have been in force during the lifetime of the insured for 2 years.' " *Id.* This limitation strengthens the logical conclusion that reliance is required to avoid a contract because it emphasizes that the "two-year limit permits full investigation by an insurance company of any matters *which formed part of the decision to make the contract.*" *Id.*, 66-67 (emphasis added).

[4] The majority demonstrates the weakness of its statutory analysis by creating a distinction where none exists, stating:

> The statute clearly does not state that the misrepresentation must have induced the insurer to contract. Rather, it simply defines a representation as one that is made "as an inducement to the making" of a contract.
>
> While that distinction obviously eludes the dissent, we believe it to be an important one. Clearly, an applicant may make a misrepresentation "as an inducement to the making" of a contract without the inducement actually causing the insurer to contract. Our construction, contrary to the dissent's, gives meaning to the Legislature's use of "either" and "or," which use, as stated, indicates that the terms "acceptance of the risk" and "hazard assumed" have different meanings. [*Ante* at 460, n 6.]

According to Black's Law Dictionary, inducement is "[t]o *cause* [a] party to choose one course of conduct rather than another." Black's Law Dictionary (6th ed), p 775 (emphasis added). To circumvent the meaning of § 2218(2), the majority creates its own distinction by eliminating the causation element of inducement. No authority exists to support this surprising distinction.

Interpreting § 2218, the Court of Appeals has formulated a test. It succinctly provides that, to void a policy on the basis of a misrepresentation under the statute, an insurance company must

> (1) demonstrate that [a] misrepresentation was in fact made; (2) show that the insurer relied upon the statement; and, (3) prove that the misrepresentation was material to the risk and hazard accepted by the insurer. [*Howard v Golden State Mut Life Ins Co*, 60 Mich App 469, 477; 231 NW2d 665 (1975); see *United of Omaha Life Ins Co v Rex Roto Corp*, 126 F3d 785 (CA 6, 1997).]

The majority observes that the *Howard* decision did not consider the precise language used in § 2218. However, it neglects to mention that the *Howard* panel formulated this test immediately after quoting § 2218. *Id.*, 476-477.

As noted above, the majority cites *Wickersham*, *supra* at 63 for the proposition that a misrepresentation affecting the hazard assumed by the insurer, as distinguished from the risk accepted, does not require reliance.[5] However, in *Wickersham*, this Court merely addressed the narrow question

> whether [§ 2218] requires that there be a causal relation between a material misrepresentation and the loss insured against before a right to recover under an insurance policy is barred. [*Id.*, 62.]

In *Wickersham*, the plaintiff filed a claim against an insurer for recovery of life insurance proceeds after her husband died in a swimming accident. *Id.*, 60. The

---

[5] The majority concedes that an insurer "necessarily must have relied on a false statement in an insurance application in order for such a statement to have materially affected the insurer's 'acceptance of the risk . . . .' " *Ante* at 459.

plaintiff conceded that her husband had misrepresented his medical record before he applied for the policy. She argued that the misrepresentation was not material, because it involved an undisclosed health problem that was unrelated to his death. However, the defendant insurer countered that the misrepresentation deceived it into accepting the insurance application, which otherwise it would have rejected.

This Court explained that, for a misstatement to be material to the hazard assumed, it must have affected the hazard assumed or contributed to the loss.[6] *Id.*, 62. On the basis of the narrow question presented for review, this Court held that the misrepresentation did not *affect* or contribute to the hazard assumed.[7] *Id.*, 62-63. Consequently, it was ruled not material to the hazard assumed. *Id.*

We held that, as regards a material misrepresentation, § 2218 does not require establishing a causal relationship between the misrepresentation and the circumstances of the loss before recovery is barred. *Id.*, 65. We also explained:

> It is important to note that the instant case involves a narrow question based upon a limited record. We are not presented with a record involving questions of good-faith answers, errors in writing the application, concealment of trivial or clearly nonmaterial ailments, *reliance*, or other questions of fact. [*Id.*, 70-71 (emphasis added).]

---

[6] Unlike the defendant in *Wickersham*, the insurer here failed even to allege that it was deceived by Smith's misrepresentation.

[7] Section 2218 requires an insurer to establish that knowledge of the misrepresented facts would have led it to refuse to contract. Although the majority attributes great weight to the Legislature's use of the word "either," it ignores the meaning of the word "affect" by failing to explain how a misrepresentation, which may never have been received by the insurer, affected the hazard assumed.

By omitting portions of *Wickersham*, and misconstruing the remainder, the majority reached an erroneous conclusion: that *Wickersham* supports the proposition that defendant was not required to establish reliance in order to avoid payment under the policy. Although *Wickersham* failed to expressly address the issue of reliance, the majority fails to provide any explanation for *Wickersham*'s pointed reference to it. *Id.*, 71.

An insurer has the burden of establishing a claim of misrepresentation. *Szlapa v Nat'l Travelers Life Co*, 62 Mich App 320, 325; 233 NW2d 270 (1975). Defendant moved for summary disposition. Therefore, it had the burden of establishing the absence of a genuine issue of material fact on the three elements required to void the insurance policy for misrepresentation. It was obligated, as well, to support its position by affidavits, depositions, admissions, or other documentary evidence. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

Defendant submitted an affidavit by a former underwriter to support its claim that the misrepresentation was material to its acceptance of the risk or hazard assumed. The affidavit stated that defendant would have refused to insure Smith had it been aware of his medical condition at the time it issued the policy.

Unlike the defendant insurer in *Wickersham*, defendant Globe failed to allege that it was deceived by Smith's misrepresentation. The affidavit asserted that knowledge of the misrepresentation would have adversely affected its decision to insure Smith. However, it failed to declare that defendant received the

application before insuring plaintiff or that it relied on it.[8]

Therefore, defendant omitted to allege reliance on the misrepresentation by affidavit or other documentary evidence. It failed to meet its burden of establishing this element of the *Howard* test, and failed to establish a misrepresentation under the definition provided by the Legislature in MCL 500.2218(2); MSA 24.12218(2). Therefore, it was not entitled to summary disposition on the breach of contract claim.

I believe that the majority erred in concluding that the defendant insurer was entitled to summary disposition with regard to plaintiff's breach of contract claim. By awarding defendant insurer summary disposition absent any allegation of reliance, the majority encourages insurers to search their records in an effort to find any inconsequential mistake to deny coverage. I would affirm the Court of Appeals judgment on this issue and remand for further proceedings.

CAVANAGH, J. (*concurring in part and dissenting in part*). I join Justice KELLY's dissenting opinion regarding the breach of contract issue.[1] While I concur in the result reached by the majority regarding the MCPA claim, I am in disagreement with the majority's analysis of subsections 4(1)(a) and 4(2). Confusion in analyzing MCPA claims has resulted from: construing the exemptions too broadly, rendering the vast majority

---

[8] Similarly, during oral argument, defense counsel declined to represent that defendant received Smith's application or relied on the misrepresentation in it.

[1] However, I do not join in footnote 1 of her opinion.

of private suits exempt under subsection 4(1)(a),[2] construing the exemptions too narrowly so as to remove all exemptions,[3] or construing the transaction or conduct at issue overly broad[4] or narrow,[5] rendering the MCPA or its exemptions meaningless. It is my opinion that a proper inquiry should be first to determine whether the specific transaction or conduct at issue, as opposed to the general transaction, is "specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state . . . ." MCL 445.904(1)(a); MSA 19.418(4)(1)(a). The next inquiry should characterize the party filing suit and the act or practice at issue to determine whether the act should apply to the method, act, or practice.

MCPA SUBSECTION 4(1)(a)

Subsection 4(1) provides:

---

[2] See *Kekel v Allstate Ins Co*, 144 Mich App 379, 383; 375 NW2d 455 (1985), determining whether the transaction or conduct is the subject of regulatory control.

[3] The plaintiff in *Attorney General v Diamond Mortgage Co*, 414 Mich 603, 616; 327 NW2d 805 (1982), argued that deceptive practices are not specifically authorized.

[4] The defendant in *Diamond* asserted that because he was a licensed real estate broker, he was specifically authorized to negotiate the mortgage of real estate and perform all the acts of a broker. 414 Mich 616. The majority in the instant case similarly attaches a very general label, the sale of insurance, to the transaction at issue.

[5] The plaintiff in *Diamond* characterized the conduct as deceptive practices. 414 Mich 616. The majority in the instant case states that plaintiff argued that the statute does not specifically authorize the fraudulent insurance practices that she claims were committed. *Ante* at 462-463. I could find no support for the statement that plaintiff characterized the transaction as "fraudulent insurance practices." This, however, would be an example of too narrow a characterization of the transaction or conduct.

This act does not apply to either of the following:

(a) A transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States.

(b) An act done by a publisher, owner, agent . . . .

It appears that the Legislature intended to provide defendants with a very narrow exemption for transactions or conduct *specifically authorized*, and for specific acts done by the media. Under this statute, we must examine the specific transaction or conduct at issue to determine whether the narrow exemption provided in subsection 4(1)(a) is applicable.

The majority correctly notes that *Attorney General v Diamond Mortgage Co*, 414 Mich 603; 327 NW2d 805 (1982), controls the resolution of this case, and that this Court cautioned that the exemption provided in subsection 4(1)(a) will continue to apply where a party seeks to attach labels to a transaction or conduct that is specifically authorized. 414 Mich 617. The majority then characterizes the transaction or conduct at issue as "the sale of credit life insurance," which it asserts is exempt from subsection 4(1)(a) because it is specifically authorized. *Ante* at 465. The majority then revokes this exemption by reading an exception in subsection 4(2) to the exemption in subsection 4(1)(a). In effect, this allows the court to ignore the exemption provided in subsection 4(1)(a) every time a private action is filed against an insurer under § 11.[6] Because § 11 is the only section in which a private party may file suit, under the majority view,

---

[6] MCL 445.911; MSA 19.418(11) allows a person to recover actual damages and attorney fees for a violation of the MCPA.

we should never examine the exemptions section
when a private action has been filed against an entity
encompassed by subsections 4(2)(a)-(e). As stated in
*Diamond*, I disagree that subsection 4(1)(a) is mean-
ingless. *Id.* The Legislature provided an exception to
the exemption within subsection 4(2) for private
actions by placing qualifying language in front of the
exemption for acts already made unlawful by speci-
fied public acts. If it had intended such a result, it
seems that the Legislature would have placed a simi-
lar limiting clause in subsection 4(1)(a) providing:

> *Except for the purposes of an action filed by a person
> under section 11,* this act shall not apply to a transaction or
> conduct specifically authorized . . . .

It did not. Alternatively, the Legislature could have
placed such language preceding both exemptions 1
and 2, thus mandating that the exception for private
suits applies to all subsections of § 4.

Without analysis, the majority reads subsection 2 as
an exception to subsection 1. I cannot agree. Thus, I
would not remove the exemption for conduct "specifi-
cally authorized" in these cases.

In this case, plaintiff complains that defendant uti-
lized both a certificate of insurance and an applica-
tion for insurance, and that these documents pro-
vided inconsistent eligibility requirements. Thus,
plaintiff does not complain that defendant "sold insur-
ance," as characterized by defendant and the majority.
Alternatively, as noted in *Diamond*, this conduct
should not be characterized as "misrepresentations or
false promises," as this would never be "specifically
authorized." *Id.* at 617. Instead, we must ask whether
defendant was specifically authorized to use separate

insurance eligibility forms, for a single transaction, that contain inconsistent or differing conditions for coverage eligibility. Defendant argued that an insurer is not required to attach an insurance application to the certificate of insurance. However, it has not asserted that it is specifically authorized to utilize separate forms with inconsistent eligibility requirements. Defendant does not provide an explanation regarding the inconsistent requirements. Defendant informs us that credit insurers are required to submit all policies, certificates, applications, notices, etc., under MCL 550.612; MSA 24.568(12), and that the insurance commissioner implicitly approves them by failing to object within thirty days under MCL 550.613; MSA 24.568(13). However, defendant has not argued that it has submitted the forms at issue. Even assuming that these forms were submitted and implicitly approved, there is no indication that the commissioner was aware that the forms were being used together for a single insurance sale transaction. Furthermore, I question whether the insurance commissioner's silence may be construed as a "specific authorization" under subsection 4(1)(a). Defendant would have us hold that conduct generally or implicitly allowed is exempt. Such a broad interpretation of such narrow language would result in all MCPA claims being barred. Businesses are generally allowed to transact business. The MCPA protects consumers from the unfair transaction of business.

To illustrate, in *Temborius v Slatkin*, 157 Mich App 587; 403 NW2d 821 (1986), the plaintiff filed suit against a car dealership and salesman under the MCPA. She alleged that the dealer represented that an automobile would be delivered to her upon payment to a

third party, when the dealer knew that the third party would be unable to complete the transaction because of the third party's financial difficulties. *Id.* at 593. The Court held that if plaintiff's evidence was believed, the jury could find violations of the MCPA. *Id.* at 598. This is a good example of the unfair trade practice that is barred by the MCPA. However, under the majority's interpretation of "transaction or conduct," the defendant's conduct would be exempt under subsection 4(1)(a) because the sale of automobiles is specifically authorized by the Secretary of State, MCL 257.248; MSA 9.1948. *Ante* at 465.

Under the majority view, any activity that is *regulated* by a regulatory board or officer acting under statutory authority of this state or the United States, is specifically authorized. The majority effectively adopts the *Kekel* interpretation of the statute. The *Kekel* Court provided:

> We first look to the exemption language of § 4(1)(a) to determine if plaintiffs' complaint speaks to a transaction or conduct which would be the subject of regulatory control "under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." [*Kekel v Allstate Ins Co*, 144 Mich App 379, 383; 375 NW2d 455 (1985) (citation omitted).]

The majority does not direct us to a law administered by the insurance commissioner that provides that "sale of insurance is authorized." Like most businesses, it is merely regulated. Under this broad labeling, all MCPA claims will be blocked by subsection 4(1)(a) unless they fall within the exceptions listed in subsections 4(2)(a)-(e). I suggest the majority cannot provide meaningful examples where a consumer

would not be blocked by subsection 4(1)(a) under its reading of the terms "specifically authorized."

Under MCL 445.903; MSA 19.418(3), the MCPA protects consumers from unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of "trade or commerce." Trade or commerce is defined, in part, as:

> [T]he conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity. [MCL 445.902(d); MSA 19.418(2)(d).]

In simple terms, the MCPA protects consumers from unfair business practices regarding the sale of personal, family, or household goods or services. Because such businesses are regulated, the consumer has little or no redress under the provisions of the MCPA according to the majority.

Instead, I read the statute consistent with our determination in *Diamond* that general transactions or conduct subject to licensing are not necessarily exempt from the MCPA. Plaintiff correctly notes that "subject to regulation" is not the same as "specifically authorized."[7] In the instant case the transaction or conduct at issue is defendant's use of inconsistent insurance eligibility forms. Defendant has failed to show that this conduct is specifically authorized. At

---

[7] See also *Robertson v State Farm Fire & Casualty Co*, 890 F Supp 671, 676 (ED Mich, 1995), stating that the inquiry under subsection 4(1)(a) is not whether the conduct is subject to regulation, but rather whether the conduct is "specifically authorized."

most, defendant has shown that when used separately, the forms are implicitly allowed. This is insufficient.

MCPA SUBSECTION 4(2)

This section provides:

> Except for the purposes of an action filed by a person under section 11, this act shall not apply to an unfair, unconscionable, or deceptive method, act, or practice that is made unlawful by [various specified public acts.]

In this case, plaintiff, daughter of the deceased insured, is "a person" as defined by MCL 445.902(c); MSA 19.418(2)(c), which includes a natural person.

Furthermore, plaintiff filed under subsection 11(2) which provides:

> Except in a class action, a person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees.

The court in *Robertson v State Farm Fire & Casualty Co*, 890 F Supp 671, 674-675 (ED Mich, 1995), correctly explained the organization of the different sections of the MCPA:

> Thus, section 11 is the section regarding private causes of action brought by consumers. The only other sections addressing who may bring actions under the act (and under what circumstances) are sections 10 and 15. Section 10 applies to class actions brought by the attorney general on behalf of citizens of the state, and § 15 extends to county prosecutors the power of the attorney general to bring suit. [Citations omitted.]

Section 11 allows private actions to be brought and § 4(2) excepts actions brought under § 11 from exemption from the Michigan Consumer Protection Act. Therefore, plaintiffs' action is not exempted from the act's purview. The act allows private party suits where state-initiated prosecution would be precluded under [MCL 445.904(2)(a)-(g); MSA 19.418(4)(2)(a)-(g)].

Plaintiff's complaint alleged violations of the MCPA. Specifically, she alleged violations of MCL 445.903(1)(a)-(e); MSA 19.418(3)(1)(a)-(e), and requested actual damages and attorney fees pursuant to § 11. Therefore, plaintiff's suit is not barred by the exemption provided in subsection 4(2).

I disagree with the conclusion that we should ignore subsection 4(1)(a) when a private suit is filed against an insurer, yet utilize it to bar most consumer claims that do not fall under the exception listed in subsections 4(2)(a)-(e). However, I agree that defendant was not entitled to summary disposition on its MCPA claim. I would hold that because defendant has failed to provide evidence that its conduct, using inconsistent insurance eligibility forms in a single transaction, is specifically authorized, it is not exempt from suit under subsection 4(1)(a) of the MCPA. I would also hold that because plaintiff is a person filing under § 11, defendant is not exempt under subsection 4(2).