*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARGARET SHALDA,

       Plaintiff-Appellant,

v

REDICO, LLC, 150 WEST JEFFERSON OWNER
LLC, and CONTINUUM SERVICES, INC,

       Defendants-Appellees.

UNPUBLISHED
July 29, 2021

No. 353211
Wayne Circuit Court
LC No. 19-001183-NO

Before: MARKEY, P.J., and M. J. KELLY and SWARTZLE, JJ.

SWARTZLE, J. (*concurring in part and dissenting in part*)

I respectfully concur in part and dissent in part. With respect to the majority's holdings that (1) plaintiff's complaint sounded in premises liability; (2) plaintiff waived any argument to the contrary; and (3) plaintiff likewise waived any argument that the trial court erred in dismissing Redico, LLC, I fully concur. I would, however, go further and affirm the trial court's grant of summary disposition because the hazard was open and obvious.

When considering a motion for summary disposition under MCR 2.116(C)(10), a judge must analyze and evaluate the relevant record evidence, though the judge cannot weigh the evidence or make credibility determinations, and the judge must draw reasonable inferences in favor of the nonmoving party. See *Smith v Globe Life Ins Co*, 460 Mich 446, 457; 597 NW2d 28 (1999); see also *Matsushita Elec Indus Co v Zenith Radio Corp*, 475 US 574, 587; 106 S Ct 1348; 89 L Ed 2d 538 (1986) (explaining that the purpose of the analogous Federal Rule of Civil Procedure 56 is to "pierce the pleadings and to assess the proof" of the relevant claim). To analyze and evaluate the evidence, a judge must first make sense of it—and rarely does evidence speak for itself. As one example, outside of body-cam evidence from a police officer or other first responder, surveillance video hardly ever presents itself from the precise vantage point of the person in question. And yet, through our common reason and everyday experience, we can often translate (or extrapolate) the visual evidence and evaluate it from a different perspective. If we refuse to do this, then we resign ourselves to being trapped in a rigid perspectivism and might as well do away with MCR 2.116(C)(10) in all but the most obvious (and rare) case.

So it is here. The record confirms that the area outside of the elevator was well lit, nothing obstructed plaintiff's view when she exited the elevator, and there was a stark contrast between the light color of the marble floor and the dark color of the floor mat. Admittedly, the surveillance video camera was elevated and to the side of the elevator. Thus, the evidence from the surveillance video does not provide this Court with a view from the precise angle that plaintiff had when she exited the elevator. And yet, using the evidence from the surveillance video, as processed through our common reason and everyday experience, we can understand what plaintiff saw or should have seen when she exited the elevator—a large wrinkle in the carpet.

Accordingly, the trial court correctly concluded that there was no genuine issue of material fact that an average person of ordinary intelligence would have discovered the wrinkle in the mat upon casual inspection. Because the hazard was open and obvious, the trial court did not err by granting defendants' motion for summary disposition with respect to her premises-liability claim.

/s/ Brock A. Swartzle